637 F.2d 1345
 27 Empl. Prac. Dec. P 32,293
 Vernon WALLACE, Robert Lemons, Cornelius Hickey, James
Richardson and George Shannon, Appellants,
v.
Commander George C. CHAPPELL, Lieutenant Commander Kenneth
Viafore, Lieutenant Clarence Schultz, Lieutenant Barron
Bianco, Lieutenant Kenneth Jordan, EMC Richard McCannon, ICC
David Lamser, MSC Lumberto Papa, Appellees.
 No. 79-3172.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 16, 1980.
Decided Feb. 2, 1981.
 
 John Murcko, Oakland, Cal., for appellants.
 Edward F. Kolker, Asst. U. S. Atty., San Diego, Cal., for appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before BROWNING, Chief Judge, GOODWIN, KENNEDY, SKOPIL, FARRIS, PREGERSON, ALARCON, POOLE, FERGUSON, NELSON and BOOCHEVER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs, enlisted United States Naval personnel, sued certain of their superior officers for money damages and injunctive relief for alleged racial discrimination in job assignments, schooling, punishment, quarterly marks and skill ratings. They sought redress under 42 U.S.C. § 1985 and its jurisdictional counterpart, 28 U.S.C. § 1343. The district court dismissed the action and plaintiffs appeal.
 
 
 2
 The district court entered final judgment on January 30, 1979, and thirty-five days later, the plaintiffs filed a notice of appeal. Defendants moved to dismiss the appeal as untimely. In civil cases under Fed.R.App.P. 4(a)(1), the notice of appeal "shall be filed with the clerk of the district court within 30 days of the entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days of such entry." The timely filing of the notice of appeal is mandatory and jurisdictional. Browder v. Director, Ill. Dept. of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978).
 
 
 3
 The case was taken en banc to determine whether the plaintiffs, who sued the defendants in both their personal and official capacities, are entitled to 60 days under Rule 4(a)(1) to file their notice of appeal.
 
 
 4
 The complaint alleged in general terms of a number of grievances claimed by each of the plaintiffs against various defendant officers. The plaintiffs alleged that the defendants, acting as individuals, violated various constitutional rights of the plaintiffs. The plaintiffs also characterized the conduct of the defendants as malicious and unlawful. The district court concluded that the action was essentially one for money damages against the defendants individually, partly because the plaintiffs had so framed their claim in order to avoid the various defenses that might be tendered by military officers sued for their actions taken in the line of duty.
 
 
 5
 The plaintiffs argued that the defendants acted "ultra vires" and outside the scope of their official duties.[1] But the complaint also alleged acts and omissions of the defendants that could occur only in their line of duty as naval officers, and prayed for injunctive relief to change their behavior. The district court, as noted, dismissed the action on the grounds that the acts complained of were nonreviewable military decisions, that defendants were entitled to intra-service immunity, and that plaintiffs had failed to exhaust their administrative remedies.
 
 
 6
 In Michaels v. Chappell, 279 F.2d 600 (9th Cir. 1960), cert. denied, 366 U.S. 940, 81 S.Ct. 1663, 6 L.Ed.2d 851 (1961), we held in effect that a party could not take inconsistent positions. We said that a plaintiff who contended (in order to avoid a defense of immunity) that the government agent was acting as a private citizen, could not, upon appeal, contend that the defendant was a government officer on government business in order to avail himself of the 60-day rule. 279 F.2d at 602. The Michaels decision has fostered confusion of the jurisdictional and substantive issued by making the time for appeal turn upon the form of the pleading.
 
 
 7
 The defendants argue, however, that Michaels should be followed at least in actions for money damages, and rely upon Hare v. Hurwitz, 248 F.2d 458 (2nd Cir. 1957) (cited in Michaels).[2] In Hare, the court construed "officer of the United States" in the predecessor to Fed.R.App.P. 4(a) by examining the purpose intended to be served by the rule. The advisory committee notes indicated that the allowance of an additional 30 days was necessary to permit cases against government agencies and officers to be routed to the various government officials responsible for deciding whether or not to take an appeal.[3] The court found, on this reasoning, that no government agency had any interest in the case (a personal injury case arising out of an automobile collision) and that the 60-day rule was not applicable.
 
 
 8
 Although the policy behind Rule 4(a) was correctly applied in Hare v. Hurwitz, it does not follow that Rule 4(a) should be narrowly construed to foreclose appeals. The Ninth Circuit has expressed a preference for a liberal reading of Rule 4(a) in order to alleviate uncertainty when the government has even an indirect interest. In a case where the timeliness of the appeal depended on whether or not the United States was a party (and not whether an officer of the United States was a party), this court stated: "We agree with Judge Friendly and Professor Moore that a literal reading of the 60-day exception is the preferred view in order to eliminate the element of uncertainty created by a 'hidden exception or qualification' in a critical procedural rule." In re Paris Air Crash of March 3, 1974, 578 F.2d 264, 265 (9th Cir. 1978) (citations omitted).
 
 
 9
 Here, the crucial language is "officer of the United States," and a "literal reading" is not entirely dispositive. Some interpretation of the language is required. The defendants are "officers of the United States"[4] within a literal reading of Rule 4(a) and the 60-day rule is strongly indicated. We believe, however, that Congress intended the reference to officers of the United States to be read in context with their activities, authority, and duties.
 
 
 10
 A workable rule would be one that looks at who represents the parties[5] and the relationship of the parties to each other and to the government during the course of the conduct that gave rise to the action. Whenever the alleged grievance arises out of a government activity, the 60-day filing period of Rule 4(a) applies if: (a) the defendant officers were acting under color of office,[6] or (b) the defendant officers were acting under color of law or lawful authority,[7] or (c) any party in the case is represented by a government attorney. In this case, all of the relevant indicators point to the 60-day rule.
 
 
 11
 To the extent that Michaels v. Chappell, supra, is inconsistent with this holding, it is overruled. The motion to dismiss the appeal is denied, and the case is remanded to the original panel which heard oral argument to address the merits of the appeal.
 
 
 12
 POOLE, Circuit Judge, dissenting.
 
 
 13
 I respectfully dissent both from the en banc order and from the majority's disposition.
 
 
 14
 Taking this case en banc in order to overrule Michaels v. Chappell, 279 F.2d 600 (9th Cir. 1960), cert. denied, 366 U.S. 940, 81 S.Ct. 1663, 6 L.Ed.2d 851 (1961), seems to me plainly unnecessary.
 
 
 15
 Michaels held that a pleader who intentionally tailors his complaint so as to charge a governmental official with engaging in tortious conduct in his individual, not official, capacity is not charging him officially; that is, the complaint does not charge "the United States or an officer or agency thereof," within the meaning of Rule 4(a) of the Federal Rules of Appellate Procedure; and that if such a plaintiff appeals from an adverse decision of a district court, he must file his notice of appeal within 30, not 60, days. That seems to me a clear, understandable and entirely workable rule of procedure.
 
 
 16
 The Michaels court reasoned that, given plain English language meaning, allegations that federal agents "were acting completely without authority throughout," Id. at 601, means that they were doing things as individuals. When the appellant there lost after engineering his way into federal court and then further neglected to file a timely notice of appeal within 30 days, he tried to invoke the enlarged period of 60 days (which is reserved for cases where people sue or are sued by the government). He said that his allegations really ought to be read as if he had charged the agents as "officers of the United States, * * * because (a)cting 'in excess of authority,' * * * is different than acting 'outside of authority.' " Id. at 602. That panel 20 years ago, remarkably unpersuaded by "such a hot and cold change of position," simply rejected it. Id. Today's en banc majority, however, scanning quite analogous language, sees it differently. The district court found that plaintiffs had fashioned their language specifically so as to charge individual, not official, conduct for the simple reason that plaintiffs foresaw the adverse consequences of suing their superiors as officials. Nonetheless, the majority in a feat of true Delphic skill has uncovered inferences and nuances of meaning which signify that official action is truly at issue.
 
 
 17
 I do not think Michaels can be as easily distinguished as does the majority; but if they are right in thinking so, there was a simple way of avoiding taking this case en banc. The original panel declined to construe Michaels differently and asked for en banc review. The majority here finds the difference which the panel could not see. If so, this appeal is not untimely and Michaels is not a bar. But instead of pursuing the route of avoiding the precise obstacle which its rationale had just circumvented, the court yields to the temptation to decree new meaning to FRAP 4(a)(1), a labor most uncompelled.
 
 
 18
 By failing to distinguish Michaels, the majority of course must deal with an untimely notice of appeal. But this does not call for revising the rule of overruling precedent because there exists otherwise a ready basis of appellate jurisdiction. A district court has power under Rule 60(b) of the Federal Rules of Civil Procedure to extend the time for filing notice of appeal upon a showing of excusable neglect or good cause.[1] In the form in which the rule existed when this appeal was noticed, we have routinely disposed of untimely issues by way of dismissal without prejudice to an appellant's right to renew upon a proper showing, by remanding to the district court for a determination whether the tardiness was deliberate or excusable. Such a practice protects respect for the appellate process and gives appropriate deference to the trial court's better opportunity of weighing the nature of the delay. It is common practice in this and other circuits.[2] Moreover, even where an appellate court dismisses outright on account of untimeliness, the party may move to the district court for an extension, again upon a good cause showing. See United States v. McKnight, 593 F.2d 230, 233 (3d Cir. 1979); id. at 233, 234 (Adams, J., dissenting); cf. Salazar v. San Francisco Bay Area Rapid Transit District, supra, 538 F.2d at 270.
 
 
 19
 We did not follow that practice here. The majority explains instead that we took this case en banc because "The Michaels decision has fostered confusion of the jurisdictional and substantive issues by making the time for appeal turn upon the form of pleading." At 1347. Much could be spoken of justification for determining jurisdiction, timeliness and other important aspects of the court process, on the basis of the pleadings but it is unnecessary so to speak. My research indicates that Michaels has been cited only twice since it came down in 1960. See NeSmith v. Fulton, 615 F.2d 196, 198 (5th Cir. 1980); In re O'Bryan, 399 F.2d 916, 918 (10th Cir. 1968). Neither of these cases has intimated disapproval of the holding which the majority now overrules. Thus, it is difficult to identify the source of the confusion which is said to have been fostered and which calls for departure from a settled and workable practice. If Michaels has ever confused anyone other than the appellants here, it has most certainly not been objectively indicated.
 
 
 20
 It was of course as certain as yesterday that once the decision was made to restructure (for this circuit) FRAP 4(a), the lack of merit of the appeal itself would become fairly obvious for reasons already stated by the district judge. It is therefore a matter of some curiosity that, instead of finishing the job, the majority has remanded the case to the original panel which must now reconvene to pronounce the indicated last rites. Thus, two panels have on three occasions had to devote the collective energies of a majority of the active judges of this court on an appeal which could long ago have been terminated.
 
 
 21
 This overlong dissent, itself of questionable economy, has been prompted by concern that our court, with its formidable backlog, has expended its energies on judicial rulemaking of dubious priority. Although the temptation is strong to gussy up[3] our creaking system, part of whose judicial administration is, albeit briefly, let to us, this effort was simply not that urgent. Rather than detouring to overrule old precedents deemed faded in the new light of hindsight, I think our resources were better deployed against the important challenges with which in abundance this court is already confronted.
 
 
 
 [1]
 Because the defense of sovereign immunity may bar recovery for acts performed by an officer in his official capacity, a plaintiff suing a government officer will often claim that the officer acted as an "individual." See Larson v. Domestic & Foreign Corp., 337 U.S. 682, 689-91, 69 S.Ct. 1457, 1461-62, 93 L.Ed. 1628 (1949) (injunction case); cf. Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974) (action against state official for money damages is not barred by the eleventh amendment); Ex parte Young, 209 U.S. 123, 155-56, 28 S.Ct. 444, 452, 52 L.Ed. 714 (1908) (action to enjoin state official from violating the constitution is not barred by the eleventh amendment). And because various "official immunities" can be invoked to protect the officer from personal liability for discretionary acts undertaken in the scope of his authority, see Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), plaintiffs will often claim that an official's actions were "ultra vires" or beyond the scope of his authority
 
 
 [2]
 Consistency sometimes lies in the eye of the beholder. Here, the government defendants relied upon their official-duty status in urging the district court to dismiss the action, and argue in this court that we should apply Michaels v. Chappell, 279 F.2d 600 (9th Cir. 1960), because they were sued as individuals. The argument underscores the need for another look at Michaels v. Chappell
 
 
 [3]
 The policy of the 60-day rule discussed in Hare was recently reiterated in NeSmith v. Fulton, 615 F.2d 196, 198 (5th Cir. 1980)
 
 
 [4]
 Permanent appointments to grades above chief warrant officer in the Regular (that is, not Fleet Reserve or Naval Reserve) Navy "shall be made by the President, by and with the advice and consent of the Senate." 10 U.S.C. § 5572, § 5001(a)(1), (9). Among the defendants here are a commander, a lieutenant commander, and three lieutenants. The briefs and the complaint are silent on whether any are reserve officers. The complaint states that the defendants essentially constitute the command group aboard USS DECATUR. We assume for this case that defendants are "officers of the United States."
 
 
 [5]
 28 U.S.C. § 516 states:
 "Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."
 
 
 [28]
 C.F.R. § 50.15(a) states:
 "Under the procedures set forth below, a federal employee (herein defined to include former employees) may be represented by Justice Department attorneys in state criminal proceedings and in civil and Congressional proceedings in which he is sued or subpoenaed in his individual capacities, not covered by § 15.1 of this chapter.
 "(1) When an employee believes he is entitled to representation by the Department of Justice in a proceeding, he must submit a request for that representation, together with all process and pleadings served upon him, to his immediate supervisor or whomever is designated by the head of his department or agency, forthwith....
 "(2) Upon receipt of the agency's notification of request for counsel, the Civil Division will determine whether the employee's actions reasonably appear to have been performed within the scope of his employment, and whether providing representation is in the interest of the United States. If a negative determination is made, Civil Division will inform the agency and/or the employee that no representation will be provided."
 
 
 [6]
 "... An act under color of office is an act of an officer who claims authority to do the act by reason of his office when the office does not confer on him any such authority. (citations omitted)." Black's Law Dictionary 241 (5th ed. 1979). "For an act of a government officer to be under color of office, the act must have some rational connection with his official duties." Arthur v. Fry, 300 F.Supp. 620, 622 (E.D.Tenn.1969). This phrase would cover any act by an officer which was made possible by the officer's official position, even if there is no arguable legal justification ("color of law")
 
 
 [7]
 "The appearance or semblance without the substance, of legal right...." Black's, id. This test is most often used in connection with civil rights suits under 42 U.S.C. § 1983. Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)
 Color of law exists when a "private" organization or individual is "so closely entwined" with the government, that private action becomes "state action". Smith v. Young Men's Christian Ass'n of Montgomery, 462 F.2d 634, 647 (5th Cir. 1972).
 
 
 [1]
 See e. g., Selph v. Council of the City of Los Angeles, 593 F.2d 880, 882-83 (9th Cir. 1979); United States v. Stolarz, 547 F.2d 108, 111 (9th Cir. 1976) (applied to Rule 4(b)); Salazar v. San Francisco Bay Area Rapid Transit District, 538 F.2d 269, 270 (9th Cir.) cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976)
 
 
 [2]
 See, e. g., Craig v. Garrison, 549 F.2d 306 (4th Cir. 1977) (mem.); United States v. Stolarz, supra, 547 F.2d at 111; Seshachalam v. Creighton University School of Medicine, 545 F.2d 1147 (8th Cir. 1976); Stirling v. Chemical Bank, 511 F.2d 1030 (2d Cir. 1975) (per curiam); Alley v. Dodge Hotel, 501 F.2d 880 (D.C.Cir.1974); Brainerd v. Beal, 498 F.2d 901 (7th Cir.), cert. denied, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974); Tuley v. Heyd, 492 F.2d 788 (5th Cir. 1974) (per curiam); Reed v. Michigan, 398 F.2d 800 (6th Cir. 1968) (per curiam) (Rule 73(a), predecessor to Rule 4(a)
 
 
 [3]
 According to The Random House College Dictionary, First Edition, 1980: 1. To dress in one's best clothes (usually fol. by up )