Robert Stanley WILLIAMS,
Plaintiff-Appellee,

v.

Samuel P. COLLINS, Jr., et al.,
Defendants-Appellants.

No. 82–4434.

United States Court of Appeals,
Fifth Circuit.

April 2, 1984.

Patricia D. Rogers, William M. Dye, Jr., Asst. U.S. Attys., Oxford, Miss., John C. Hoyle, Leonard Schaitman, Barbara Herwig, Appellate Staff, Civil Div., Edward R. Cohen, Dept. of Justice, Washington, D.C., for defendants-appellants.

Smith & Phillips, Richard T. Phillips, Batesville, Miss., for plaintiff-appellee.

Before GEE, TATE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Officials of the Army Corps of Engineers appeal from the denial of their motion for dismissal or summary judgment, claiming that the doctrine of absolute immunity under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), insulates them from liability to Williams on his common law tort claims. We hold that orders denying absolute immunity are automatically appealable under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and finding defendants immune, reverse on the merits.

I

On April 26, 1982, Williams sued nine federal officials who participated in personnel and administrative proceedings which resulted in his removal from federal employment.[1] His complaint contained two types of claims. First, he alleged constitutional claims of violations of due process arising out of the administrative proceed-

---

1. The defendants are Williams' three successive superiors in the agency (Woods, Harrison, and Hite), the military commander (Collins) of the agency district in which Williams was employed and his two aides (Shockey and Witherspoon), the military commander (Read) of the division in which the employment district was situated, who had ordered the investigation into Williams' conduct, and a military officer (Cooke) and civilian lawyer (Hale) who conducted the investigation resulting in Williams' separation from federal government.

ings that led to his loss of federal employment.[2] Second, he advanced common law tort claims. Defendants moved to dismiss, or in the alternative for summary judgment. The district court dismissed the due process claims, reasoning that these constitutional claims against Williams' superiors were precluded by *Bush v. Lucas,* 647 F.2d 573 (5th Cir.1981), *affirmed,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and *Broussard v. United States Postal Service,* 674 F.2d 1103 (5th Cir.1982). The district court denied the motion directed to the remaining claims, finding that material issues of fact remained as to defendants' entitlement to official immunity.

■ By order filed May 11, 1983, No. 83–9001, this court refused to allow a § 1292(b) interlocutory appeal by defendants from the refusal to dismiss what they believed were several constitutional claims that Williams had alleged in addition to his due process claims. In his response to defendants' attempt to appeal, Williams denied that any further constitutional claims remained, and stated that "[t]he case is now proceeding under Mississippi law on the common law torts of Tortious Interference with Contract Rights, Slander and Defamation, False Imprisonment, and Trespass/Invasion of Privacy." Relying on Williams' representations made as master of his own complaint, the court dismissed the interlocutory appeal, stating explicitly that the remaining claims in Williams' complaint "are based not on alleged constitutional violations, but on alleged state common law violations." Williams now contends that he did not mean to say what he said in urging this court to refuse to hear defendants' interlocutory appeal, and says that his common law tort claims also double as constitutional claims. We consider it the law of the case that Williams' complaint contained only common law tort claims in addition to the constitutional claims dismissed by the district court, notwithstanding that both the district court and defendants mistaken-

ly assumed the complaint contained other constitutional claims.

## II

### 1.

We face at the outset the issue of whether we have appellate jurisdiction. Williams urges that no appellate jurisdiction exists. He alleges, first, that the government's notice of appeal is fatally defective because it names the "United States" as defendant rather than any of the actual defendants in the suit, second, that the government's appeal was not timely filed since the thirty-, and not the sixty-day time limit applies to this case, and third, that the district court's order is not "final" and therefore not appealable at all.

### 2.

■ Williams' first objection to the sufficiency of the notice of appeal is without merit. *See, e.g., Smith v. Atlas Off-Shore Boat Service, Inc.,* 653 F.2d 1057, 1059 n. 1 (5th Cir.1981). All parties were fairly and timely apprised of the appeal, including Williams, who was properly named.

### 3.

■ Williams' second point arises because of ambiguity in Federal Rule of Appellate Procedure 4(a), providing 30 days as the norm for filing a notice of appeal, "but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days." The difficulty is that Williams has purported to sue the defendant government officers only in their "individual" capacity. The Ninth Circuit, in *Wallace v. Chappell,* 637 F.2d 1345 (9th Cir.1981) (en banc) recently overturned its own precedent applying the 30-day time limit in a case involving a government officer sued in his individual capacity for possibly government-related activity. *See Michaels v. Chappell,* 279 F.2d 600 (9th Cir.1960), *cert. denied,* 366 U.S. 940, 81 S.Ct. 1663, 6 L.Ed.2d 851 (1961). We are per-

---

**2.** On November 5, 1982, in *Williams v. Army Corp. of Engineers,* 692 F.2d 755, this court affirmed the Merit Systems Protection Board's order sustaining Williams' removal from federal employment.

suaded of the wisdom of the Ninth Circuit's reading of the rule.

Whenever the alleged grievance arises out of a government activity, the 60-day filing period of Rule 4(a) applies if: (a) the defendant officers were acting under color of office,[6] or (b) the defendant officers were acting under color of law or lawful authority,[7] or (c) any party in the case is represented by a government attorney. Footnote 6: "... An act under color of office is an act of an officer who claims authority to do the act by reason of his office when the office does not confer on him any such authority. [citations omitted]." Black's Law Dictionary 241 (5th ed. 1979). "For an act of a government officer to be under color of office, the act must have some rational connection with his official duties." *Arthur v. Fry,* 300 F.Supp. 620, 622 (E.D. Tenn.1969). This phrase would cover any act by an officer which was made possible by the officer's official position, even if there is no arguable legal justification ("color of law"). Footnote 7: "The appearance or semblance without the substance, of legal right...." Black's, *id.* This test is most often used in connection with civil rights suits under 42 U.S.C. § 1983. *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Color of law exists when a "private" organization or individual is "so closely entwined" with the government that private action becomes "state action." *Smith v. Young Men's Christian Ass'n of Montgomery,* 462 F.2d 634, 647 (5th Cir. 1972).

*Wallace v. Chappell,* 637 F.2d at 1348, 1348 nn. 6–7. By this standard the appeal was timely, being filed within sixty days.

### 4.

Williams' third ground for dismissal raises the issue of whether district court orders rejecting claims of absolute immunity are appealable under the *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) collateral order doctrine. It also raises the subsidiary question of whether appealability obtains in all circumstances, or whether it turns on the circumstances of each case. The Supreme Court was confronted with this issue in *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).[3] But *Nixon* did not make clear whether the Court endorsed appealability under *Cohen* in all circumstances, as a class, or only when the appeal raises urgent, unsettled questions of law.

In *Nixon,* the Court decided that orders denying absolute immunity fit into *Cohen*'s tripartite formulation of interlocutory decisions that "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." *Nixon,* 102 S.Ct. at 2698, *citing Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978), and *Cohen,* 337 U.S. at 546–47, 69 S.Ct. at 1225–1226. It buttressed that conclusion by analogizing the denial of absolute immunity from constitutional tort liability to other types of absolute immunity the denial of which had previously been found to be appealable as a class. *Nixon,* 102 S.Ct. at 2698, *citing Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (claim of immunity under Speech & Debate Clause), and *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (claim of immunity under Double Jeopardy Clause). But it then seemed to limit its discussion to the circumstances of the case. The Court held that the court of appeals erred in deciding that it lacked jurisdiction because the appeal did not present the "serious and unsettled" question which *Cohen* estab-

---

**3.** Although *Nixon* and *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), were *Bivens* cases, their rules undoubtedly apply to § 1983, and common law tort actions against federal officials. The *Harlow* Court noted that " 'it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.' " *Harlow,* 102 S.Ct. at 2738–39 n. 30, *quoting Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978).

lished as an "additional requirement" to the exercise of jurisdiction over an interlocutory appeal. The Court concluded that the question was "serious and unsettled," and that *because* it was, the issue was *therefore* appealable. *Nixon,* 102 S.Ct. at 2698.

The injection of the "serious and unsettled" element generates the uncertainty. Other cases finding district court orders before final judgment appealable as a class do so by discounting the significance of this case-by-case restriction, *Abney,* 431 U.S. 662 n. 8, 97 S.Ct. at 2042 n. 8,[4] or ignoring it altogether. *Helstoski,* 442 U.S. at 506–08, 99 S.Ct. at 2448–49; *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951). *Abney & Helstoski* involved claimed immunities that encompassed not only liability,[5] but also immunity from trial itself. *Cohen's* third element of "unreviewability on appeal from a final judgment" was met in *Abney, Helstoski* and *Stack* because the right at stake would have been irretrievably lost by the continuation of trial court proceedings—whether or not the legal issue presented by the particular case was clearly settled. The *Nixon* Court's reliance on the "serious and unsettled" element, if taken for all its worth, narrows the substantive protection of the accorded immunity to protection from ultimate liability.

Two points weigh against that conclusion. First, *Nixon's* emphasis upon the unsettled question of law aspect may reflect only its rejection of the D.C. Circuit's finding, a simple checkmating in conformity with the Court's traditional practice of declining to decide questions unnecessary to resolution of the case before it. Second, *Harlow* —which relied on *Nixon's* jurisdictional analysis to establish its own jurisdiction, *Harlow,* 102 S.Ct. at 2732 n. 11—placed great emphasis, in its decision to eliminate the subjective prong of qualified immunity,

on the use of constitutional tort immunities to avoid unnecessary trials and minimize governmental disruption caused by litigation and discovery. *See id.* at 2736. In particular, *Harlow* contemplated that eliminating the subjective standard would facilitate pretrial disposition of the cases. *Id.* at 2738–39. That rationale would seem to press official immunity questions into the *Abney-Helstoski* category.

The D.C. Circuit has recently concluded that *Harlow's* rationale does do precisely that. In *McSurely v. McClellan,* 697 F.2d 309, 315–16 (D.C.Cir.1982), that court held that both the qualified and absolute prongs of the immunity doctrine are intended to protect government officials not only from liability, but also from the rigors and disruptions of trial. It accordingly held that district court orders denying immunity, whether absolute or qualified, are appealable *per se* as a class, under the collateral order doctrine.

Other circuits have declined to go so far. The Tenth Circuit exercised jurisdiction over a denial of absolute immunity claimed under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) after deciding that the appeal raised a "serious and unsettled" question. In the process, it noted that a claim of absolute immunity "contests a plaintiff's right to 'hale [a defendant] into court.'" *Chavez v. Singer,* 698 F.2d 420, 421 (10th Cir.1983). But it then hedged this statement, saying that the "right to immunity ... is *arguably* lost once the trial is held." *Id.* (emphasis supplied).

The Eighth Circuit explicitly stated that *Nixon* and *Harlow* did not require as broad a rule as the one adopted in *McSurely. Evans v. Dillahunty,* 711 F.2d 828, 830 (8th Cir.1983). Therefore, "[i]n the absence of a clear mandate," it decided on a rule recog-

---

**4.** The *Abney* Court stated:

Admittedly, our holding may encourage some defendants to engage in dilatory appeals as the Solicitor General fears. However, we believe that such problems of delay can be obviated by rules or policies giving such appeals expedited treatment. It is well within the supervisory powers of the courts of appeals to establish summary procedures and

calendars to weed out frivolous claims of former jeopardy.

*Id.*

**5.** The Court has refused to differentiate between civil and criminal cases in the application of *Cohen's* collateral order exception. *Abney,* 431 U.S. at 659 n. 4, 97 S.Ct. at 2040 n. 4.

nizing "the importance of avoiding piece-meal appeals where possible." *Id.* It held

> that motions for summary judgment and motions to dismiss that are premised on absolute or qualified immunity are immediately appealable in cases that meet the following criteria: 1) The essential facts are not in dispute (this criterion may be satisfied if the trial court makes specific findings of fact, or if the parties stipulate to the relevant facts); and 2) the determination of whether the government official is entitled to immunity is solely a question of law.

*Id.*

The only other relevant circuit decisions support the idea that denials of absolute immunity are appealable as a class, but that qualified immunity denials must be treated differently. In *Forsyth v. Kleindienst,* 599 F.2d 1203 (3d Cir.1979), *cert. denied sub nom. Mitchell v. Forsyth,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981) (*Forsyth* I), a pre-*Nixon* and *Harlow* decision, the Third Circuit held that absolute immunity grants the constitutional tort "defendant the right not to be subjected to trial, not just the right not to be found guilty," *id.* at 1207, but that denials of qualified immunity do not satisfy *Cohen* and are not appealable.[6] *Id.* at 1209. The "serious and unsettled" question requirement was not at issue in *Forsyth* I. In *Forsyth v. Kleindienst,* 700 F.2d 104, 105 (3d Cir.1983) (*Forsyth* II), the majority believed itself bound by the *Forsyth* I panel's holding that rejections of absolute immunity are appealable as a class, despite the dissent's argument that *Nixon*

made clear that there must be a "serious and unsettled" question present.

Finally, in *Bever v. Gilbertson,* 724 F.2d 1083 (4th Cir.1984), the Fourth Circuit stated that denials of absolute immunity are automatically appealable *Cohen* orders, but hinted strongly that denials of qualified immunity would at least generally not be able to meet the *Cohen* criteria. The court stated that a prior unpublished decision of the Fourth Circuit had differed with the D.C. Circuit's decision that rejections of qualified immunity are *Cohen* orders. *Bever,* 724 F.2d at 1086, *citing Benford v. American Broadcasting Cos., Inc.,* 707 F.2d 504 (4th Cir.1983) (unpublished). The *Bever* court chose not to rest its dismissal of the appeal before it on any broad principle of the nonappealability of denials of qualified immunity, however. Instead, the court noted that the officials would be deeply involved in the trial of the case anyway because plaintiffs had asserted claims for injunctive relief that would not have been affected by a dismissal of the damages claims on the basis of qualified immunity. Persuaded that the policy of protecting officials from the burden of trial could not be served by allowing the appeal and that there was no "serious and unsettled" question, the court dismissed the appeal.

We are persuaded that the absolute immunity here asserted protects a defendant from trial as well as liability. *See Spiess v. C. Itoh Co.,* 725 F.2d 970 (5th Cir.1984). It follows for us that defendants have no full and effective review after trial. *See id.* The order rejecting their claim of absolute immunity is appealable.[7]

---

**6.** This distinction between absolute and qualified immunity may well not survive *Harlow's* language on the function of qualified immunity. On the other hand, as discussed below, it may be argued that qualified immunity issues are more closely entwined with the merits of a case than are issues of absolute immunity, and therefore that denials of qualified immunity may not meet the prong of *Cohen* requiring the separability of an issue from the merits of a case. We are not squarely presented with the issue of the appealability of rejections of qualified immunity, and decide only the appealability of denials of absolute immunity.

**7.** We caution that, despite the rule we announce today, many denials of claimed immunity in pretrial proceedings will not be in a posture for appellate review, in that entitlement to immunity will turn on disputed questions of fact or will otherwise be inextricably bound up with the merits of the claims. While *Harlow* made easier the pretrial resolution of immunity claims by its elimination of the subjective prong of good faith, there remain many cases where such early decisions cannot be made. Whether efforts to appeal such orders will be dispatched for lack of jurisdiction as lacking the requisite collateral character or whether they will be summarily returned on

## III

■ Defendants assert that we should order the dismissal of the case for lack of subject matter jurisdiction, arguing that Williams' federal claims were not sufficiently substantial to support pendent jurisdiction over the common law tort claims. Defendants argue that, before Williams sued, the Fifth Circuit had already firmly established in *Bush v. Lucas,* 647 F.2d 573 (5th Cir.1981), *affirmed,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), that federal employees have no *Bivens*-type remedy against their employment superiors. Although here the federal claims certainly were precluded by our decision in *Bush,* when filed the claims were substantial enough to meet the jurisdictional requirement. A similar constitutional claim involving a federal employee and his superiors was advanced in *Broussard v. United States Postal Service,* 674 F.2d 1103 (5th Cir.1982), a decision reported shortly after Williams filed his complaint. While *Broussard* held that the claim was precluded by *Bush,* it also noted that "[b]ecause Broussard's claim against the individual defendants is nonfrivolous ..., the district court technically erred by dismissing this claim for lack of jurisdiction rather than for failure to state a claim." *Broussard v. United States Postal Service,* 674 F.2d at 1113 n. 7. The *Broussard* court did not mention whether the complaint in the case had been filed before or after *Bush.* Regardless, until *Broussard* settled the question, the argument that *Bush* could be distinguished was a nonfrivolous one. It follows that the federal claims in Williams' complaint were substantial enough to create subject matter jurisdiction.

## IV

■ We turn now to defendants' primary argument that they are absolutely immune from liability for the common law torts alleged by Williams. Federal officials enjoy absolute immunity from common law tort liability for actions within the scope of their authority. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Claus v. Gyorkey,* 674 F.2d 427 (5th Cir. 1982). This absolute immunity does not hinge on a functional analysis as with constitutional torts. *See id.* at 431; *Evans v. Wright,* 582 F.2d 20 (5th Cir.1978). *Nixon* and *Harlow* both affirm *Barr. Nixon,* 102 S.Ct. at 2705; *Harlow,* 102 S.Ct. at 2733. All that is necessary is that " 'the action of the federal official bear some reasonable relation to and connection with his duties and responsibilities ...,' " *Claus v. Gyorkey,* 674 F.2d at 431, *quoting Scherer v. Brennan,* 379 F.2d 609, 611 (7th Cir.1967), *cert. denied,* 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967), and that the action of the official is connected with a "discretionary function." *Norton v. McShane,* 332 F.2d 855 (5th Cir.1964), *cert. denied,* 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). As is evident from the earlier description of their jobs, all of the defendants were federal officials exercising discretionary functions, from Williams' immediate supervisor to officials higher in the chain of command.

■ The district court apparently was persuaded that the commission of a tort would by definition exceed the scope of an official's authority, and therefore refused to grant summary judgment for defendants. We disagree. Instead, the rule to fulfill its purpose by necessity protects an official from trial for actions which, even though tortious, nevertheless can be said to be within the outer bounds of the official's authority. *See Barr v. Matteo,* 360 U.S. 564, 572, 79 S.Ct. 1335, 1340, 3 L.Ed.2d 1434 (1959), *quoting Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). We find no genuine issue of material fact as to whether the actions of which Williams com-

their "merits," we do not decide. We decide only that we will entertain appeals from denials of absolute immunity when entitlement to immunity is sufficiently free of fact questions as to present a question of law. Finally, we cau-

tion that the right of appeal recognized today only extends to an immunity that accords protection from trial as distinguished from possible defense to liability.

plains bore a reasonable relation to defendants' investigatory and general personnel duties. We conclude defendants acted within the outer bounds of their authority.

Williams complains of four different actions involving different sub-groups of defendants. First, he alleges defendants Woods and Cooke slandered and defamed him. Williams' affidavit alleges vaguely that he has been informed that Woods and Cooke made slanderous remarks to third persons. This hearsay is not competent evidence to create a genuine issue of material fact. *See Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 556 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Broadway v. City of Montgomery, Alabama,* 530 F.2d 657 (5th Cir.1976). Williams further points to one of Cooke's written memoranda recommending that Williams' misdeeds be "fully and publicly acknowledged." This dangling statement by itself plainly evidences no action beyond the scope of Cooke's authority. Finally, although the administrative record of Williams' termination proceedings naturally contains many negative statements about Williams, all were made in connection with those proceedings. There is no evidence in the record to support Williams' claim that Woods and Cooke made statements about Williams that were outside "the outer perimeter of [their] line of duty." *Barr v. Matteo,* 360 U.S. at 575, 79 S.Ct. at 1341.

Second, Williams alleges that defendants Collins, Witherspoon, Woods, and Cooke falsely "imprisoned" Williams. In order to get Williams out of the way of the investigation, his superiors temporarily assigned Williams to work in Vicksburg. Defendants required Williams to travel under escort to Vicksburg, and ordered him to stay there. Williams does not, however, allege that defendants used physical force or the threat of physical force to coerce him, but rather that his refusal to cooperate would have resulted in the loss of his job. This transfer of an employee under investigation was reasonably related to defendants' duties. Defendants took steps that could be reasonably calculated to help the investigation, and could reasonably have made Williams' cooperation a prerequisite for holding his job.

Third, Williams alleges that defendants Shockey, Witherspoon, Collins and Cooke exceeded their authority in searching his desk and office, including a locked desk drawer, without a warrant, and in temporarily seizing the personal items in the desk for safekeeping. Whether it was part of the investigation of Williams or a simple inventory of material in the office, this action was within the outer perimeter of defendants' line of duty. It is by no means certain that Williams had a reasonable expectation of privacy in his government-furnished desk, in relation to the possibility of his supervisors entering the desk as part of an investigation of Williams' job performance or as part of an office inventory. *See United States v. Bunkers,* 521 F.2d 1217 (9th Cir.), *cert. denied,* 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975); *United States v. Nasser,* 476 F.2d 1111 (7th Cir.1973); *United States v. Hagarty,* 388 F.2d 713 (7th Cir.1968); *United States v. Blok,* 188 F.2d 1019 (D.C.Cir.1951).

Finally, Williams alleges that defendants maliciously interfered with his employment contract. As *Barr* made clear, allegations of malice have no effect on an absolute immunity claim. *See Barr v. Matteo,* 360 U.S. at 575, 79 S.Ct. at 1341. Defendants' duty was to investigate Williams' behavior and to seek his removal if proper. Since we must look at defendants' actions as if they had been carried out without malice, we must conclude that defendants' efforts to terminate Williams' employment were also within the outer perimeter of their line of duty. Finding that there is no genuine issue of material fact as to defendants' entitlement to absolute immunity, the order of the district court is REVERSED. The action is REMANDED to the district court for entry of an order granting the motion for summary judgment in favor of defendants.