**Muhammad KENYATTA, Plaintiff,**

v.

**Roy K. MOORE, et al., Defendants.**

**Civ. A. No. J77–0298(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 27, 1985.

Shirley Payne, Patrick D. O'Rourke, American Civil Liberties Union of Miss., Jackson, Miss., Jack D. Novik (Pro Hac Vice), American Civil Liberties Union Foundation, New York City, Dennis L. Horn, Horn & Payne, Kenneth J. Rose, Jackson, Miss., David Rudovsky (Pro Hac Vice), Defender Assn. of Philadelphia, Philadelphia, Pa., for plaintiff.

Daniel E. Lynn, Asst. U.S. Atty., Jackson, Miss., Gordon W. Daiger (Pro Hac Vice), Atty., Torts Branch, Civ. Div. Dept. of Justice, Washington, D.C., Mary P. Mitchell and Peter R. Wubbenhorst (Pro Hac Vice), for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on renewed motion by defendants Roy K. Moore, James O. Ingram and Thomas Fitzpatrick for summary judgment on plaintiff Muhammed Kenyatta's state law claims. Plaintiff filed timely response to the motion, and the court has considered the memoranda with attachments submitted by both parties.

The facts of this case have been adequately recounted in two previous opinions by the court on defendants' motions for summary judgment[1] and in a published opinion from the Fifth Circuit, *Kenyatta v. Moore*, 744 F.2d 1179 (5th Cir.1984). In this the eighth year of the protracted life of this litigation, little purpose would be served by reiterating these facts in detail; thus the court will only briefly summarize the facts in light of the defendants' instant motion.

Kenyatta was engaged in civil rights activities in the late 1960's during and shortly after his tenure as a student at Tougaloo College, a predominately black college on the outskirts of Jackson, Mississippi. Defendants Moore, Ingram and Fitzpatrick were employed as special agents of the Federal Bureau of Investigation (F.B.I.) and were assigned to the Jackson, Mississippi Field Office during the relevant time period. Pursuant to a series of F.B.I. interdepartmental memoranda, the defendants engaged in a counterintelligence program aimed at gaining information about black nationalist groups and leaders for purposes of exposing and discrediting them.[2] Kenyatta became a target of F.B.I. investigation in the latter part of 1967 when one or more of the defendants caused his name to be placed on the F.B.I. "Rabble Rouser List," later called the F.B.I. "Agitator Index." In April 1969, the agents caused a letter to be sent to Kenyatta which falsely purported to be from the Tougaloo College Defense Committee, a student organization with which Kenyatta was involved. The letter criticized Kenyatta's "conduct and general demeanor" and advised him to stay away from campus or "other measures" would be taken, includ-

---

1. The record contains two lengthy discussions of the pertinent facts: one in an order issued by Magistrate John R. Countiss, III on November 20, 1979 denying summary judgment; the other in an opinion issued by Judge Dan M. Russell, Jr. on September 22, 1983 denying summary judgment.

2. By memorandum from F.B.I. Director J. Edgar Hoover dated August 25, 1967, the agency established a far-reaching counterintelligence program called "COINTELPRO–Black Nationalist Hate Groups" the stated purpose of which was "to expose, disrupt, misdirect, discredit, or otherwise neutralize the activities of black nationalist, hate-type organizations and groupings, their leadership, spokesmen, membership and supporters, and to counter their propensity for violence and civil disorder." (F.B.I. memorandum dated August 25, 1967).

ing reporting his activities to local authorities. Kenyatta left Mississippi shortly after receiving this letter because, he asserts, he relied on its authenticity and believed himself discredited in the eyes of the student body. In August 1969, the defendants gave certain F.B.I. intelligence information on Kenyatta to an attorney inquiring on behalf of the Episcopal Church as to the propriety of continuing church funding of the Jackson Human Rights Project. Kenyatta had participated in the project and he asserts that the subsequent cessation of project funding by the church was directly caused by the dissemination of this information by the defendants. Kenyatta lastly asserts that throughout his tenure at Tougaloo the defendants "circulated false and derogatory rumors and allegations" about him to local authorities, Tougaloo faculty and students, defaming his character.

Kenyatta's amended complaint alleges that defendants' actions violated his rights protected under the First, Fourth, Fifth and Ninth Amendments to the Constitution of the United States and 42 U.S.C. § 1985(3), which grants a civil cause of action for conspiracy to deprive a person of equal protection of the laws. Also charged are pendent state law claims based upon Mississippi common law of defamation and invasion of privacy and deprivation of rights secured by Sections 11 and 13 of Article 3 of the Constitution of the State of Mississippi.[3] Defendants' instant motion seeks summary judgment on the pendent state law claims on the ground that federal officials acting within the scope of their authority are absolutely immune from common law tort liability.

Plaintiff initially asserts that defendants should be barred from raising this issue before this court for the third time. Defendants' first motion for summary judgment on absolute immunity grounds was denied in Magistrate Countiss' order dated December 21, 1979.[4] No appeal was taken from that order. Defendants renewed the motion in 1983 and reasserted *inter alia* the same state law absolute immunity defense that had been previously rejected. Judge Russell's opinion dated September 22, 1983 again denied summary judgment without discussing the absolute immunity defense, presumably because the court had ruled on that ground previously and defendants had cited no new case authority which demanded reconsideration and reversal of the court's prior ruling. On appeal, the Fifth Circuit held that defendants were time barred from appealing the 1979 denial of their absolute immunity defense by Federal Rule of Appellate Procedure 4 and that the brief mention of the defense in the 1983 renewed motion did not give them a second opportunity to appeal. *Kenyatta v. Moore*, 744 F.2d at 1186–87. Therefore, it appears that the only means by which defendants can seek to avoid litigation of these state law claims is by renewed motion requesting the court to reconsider its prior ruling in light of recent, clear precedent.

■ Federal Rule of Civil Procedure 54(b) provides that a court always retains jurisdiction to modify or rescind a prior interlocutory order until a final decree is entered. A subsequent motion for summary judgment is proper after a prior motion is dismissed, if supported by new material. *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1121 (10th Cir.1979); *Kirby v. P.R. Mallory & Co., Inc.*, 489 F.2d 904 (7th Cir.1973). Even when, as here, it is argua-

---

**3.** Article 3, Section 11 of the Mississippi Constitution provides, "The right of the people peaceably to assemble and petition the government on any subject shall never be impaired." Article 3, Section 13 of the Mississippi Constitution provides, "The freedom of speech and of the press shall be held sacred; and in all prosecutions for libel the truth may be given in evidence, and the jury shall determine the law and the facts under the direction of the court, and if it shall appear to the jury that the matter charged as libelous is true, and was published for good motives and for justifiable ends, the party shall be acquitted."

**4.** The court based its 1979 denial of summary judgment on a finding that "[w]hile the broad underlying facts as recited above are uncontested, many facts more subtle (especially in the area of intent and motive), but critical to a just determination of this case, are contested and genuinely in issue."

ble that no new material supports a subsequent motion, a district court need not perpetuate error or take a more roundabout way to arrive at an ultimately necessary judgment by refusing to consider a subsequent motion after it has previously ruled the other way. *Lindsey*, 592 F.2d at 1121; *Jones v. Wike*, 654 F.2d 1129, 1130 (5th Cir.1981); *Bon Air Hotel, Inc., v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir.1970). While it is clear to this court that it has discretion, if not the obligation, to reconsider prior erroneous rulings without finding support in new material, recent Fifth Circuit decisions since the court's 1979 order clarify the absolute immunity defense sufficient to constitute such new material and allow reconsideration of a renewed motion for summary judgment. This court concludes, therefore, that its consideration of the renewed motion for summary judgment is proper at this time.

Long before the Supreme Court recognized an implied cause of action and remedy for violation of constitutional rights by a federal employee in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), it recognized that federal employees acting within the scope of their authority enjoyed absolute immunity from common law torts. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). In *Barr*, the court defined the scope of such immunity to include any acts that were within the "outer perimeter of the federal employee's line of duty." *Id.* at 575, 79 S.Ct. at 1341. The plurality in *Barr* recognized that an absolute immunity defense was necessary to shield federal governmental officials from the inevitability of ill-founded damage suits brought on account of actions taken in the exercise of their official responsibilities. *Id.* at 565, 79 S.Ct. at 1336.

■ The Fifth Circuit has recently shown a tendency to interpret *Barr* broadly in the context of *Bivens*-type suits. Utilizing the "outer perimeter" approach of *Barr*, the court has held that, for absolute immunity to apply, "it is only necessary that the action of the federal official bear some reasonable relation to and connection with his duties and responsibilities to be within the scope of his authority." *Currie v. Guthrie*, 749 F.2d 185, 188 (5th Cir.1984); *Claus v. Gyorkey*, 674 F.2d 427, 431 (5th Cir.1982) (quoting *Scherer v. Brennan*, 379 F.2d 609, 611 (7th Cir.), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967)). The challenged action of the federal official must also be connected with a "discretionary function" for absolute immunity to apply. *Williams v. Collins*, 728 F.2d 721, 727 (5th Cir.1984) (quoting *Norton v. McShane*, 332 F.2d 855, 858 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965)). Given the broad discretionary power granted in the F.B.I. directives to the agents in carrying out counterintelligence operations, it is difficult for this court to envision a tactic that would fall without the "outer perimeter" of the agents' line of duty. Clearly the actions taken by the defendant agents pursuant to the F.B.I. directives were within their line of duty. The agents' execution of those directives cannot expose them to common law tort liability.[5]

In *Williams v. Collins*, supra, Williams alleged constitutional claims of violations of due process arising out of an administrative procedure that led to his loss of federal employment. Like Kenyatta, Williams also advanced common law tort claims against the federal officials, including slander, defamation and invasion of privacy under Mississippi law. 728 F.2d at 723. Also like Kenyatta, Williams argued that, under the test of *Barr*, the commission of a tort would by definition exceed the scope of an official's authority. The district court agreed. The Fifth Circuit reversed, holding that "the rule (of absolute immunity) to fulfill its purpose by necessity protects an official from trial for actions which, even though tortious, nevertheless can be said to be within the outer bounds of the official's authority." *Id.* at 727. Thus, contrary to

---

5. The court does not here address the constitutionality of those tactics for purposes of plain-

tiff's claim of deprivation of federal constitutional rights under color of federal law.

plaintiff's argument in his response brief based on a strained reading of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the fact that the acts of a federal employee were not authorized by either state or federal law does not abrogate the absolute immunity defense as to the state law claims. *See Metlin v. Palastra*, 729 F.2d 353 (5th Cir.1984). The relevant inquiry is the scope, looking to its outer perimeters, of the federal employee's authority. While this court recognizes that certain tortious conduct can clearly exceed the scope of the employee's duty sufficient to overcome an absolute immunity defense, *Araujo v. Welch*, 742 F.2d 802 (3rd Cir. 1984) (battery), such conduct is not present here. This is especially true in light of Kenyatta's allegations of defamation and invasion of privacy, two areas in which the F.B.I. directives authorized the agents to operate in furtherance of the Bureau's counterintelligence functions.

Kenyatta's last argument is that his "claims under the Mississippi Constitution should be treated with the same respect accorded federal constitutional violations." That is, since his claims of violation of rights secured by the United States Constitution are sufficient to overcome the agents' absolute immunity defense under federal law, his claims of violation of rights secured by the Mississippi Constitution should be sufficient to overcome the agents' absolute immunity defense to the pendent state claims under Mississippi law. This argument cannot succeed. No private cause of action and damage remedy has ever been implied from the Mississippi Constitution. Moreover, the rationale underlying the rule of absolute immunity applies with equal force to both state common law and constitutional claims. The court concludes that the addition of a claim of violation of rights protected under the state constitution—for which there is no damage remedy—does not provide an independent basis for skirting the absolute immunity defense.

Summary judgment is appropriate in this case for a number of reasons. The availability of the absolute immunity defense is a legal question not appropriate for submission to a jury. *Elliot v. Perez*, 751 F.2d 1472, 1478 (5th Cir.1985). Absolute immunity does not hinge on a functional analysis as with constitutional torts. *Barr*, 360 U.S. at 431, 79 S.Ct. at *Williams*, 728 F.2d at 727. The proper analysis does not involve delicate fact questions of intent and motive; rather, it focuses on the scope of a defendant's authority proveable through documentary evidence. Lastly, summary judgment is appropriate because absolute immunity, if warranted, protects a defendant from trial as well as liability. *Williams*, 728 F.2d at 573.

For the reasons stated above, it is Ordered that defendants' renewed motion for summary judgment on plaintiff's state law claims is granted.