Muhammed **KENYATTA**,
Plaintiff-Appellee,

v.

Roy K. **MOORE**, James O. Ingram and
Thomas Fitzpatrick,
Defendants-Appellants.

No. 83–4753
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1984.

Rehearing and Rehearing En Banc
Denied Jan. 16, 1985.

George Phillips, U.S. Atty., L.A. Smith, III, Asst. U.S. Atty., Jackson, Miss., Gordon W. Daiger, Freddi Lipstein, Appellate Staff, Barbara L. Herwig, Torts Branch Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Jack D. Novik, Am. Civil Liberties Union Foundation, New York City, David Rudovsky, Philadelphia, Pa., for plaintiff-appellee.

Before RUBIN, JOLLY, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A civil rights activist seeks damages from Federal Bureau of Investigation officers for alleged invasion of his federal constitutional rights and for state law torts. The defendants' motions for summary judgment based on qualified immunity to

the federal claims and absolute immunity to the pendent state-law claims were denied. Having twice unsuccessfully sought to appeal the rulings by certification as interlocutory orders under 28 U.S.C. § 1292(b), the officers now appeal, contending that the denial of their motion, while collateral, is final in effect and, therefore, appealable as if it were a final order.[1] We find that the order will not damage defendants' legitimate interests beyond repair if appeal awaits final judgment, and hold that it is therefore not immediately appealable. Accordingly we dismiss the appeal.

## I.

Muhammed Kenyatta seeks damages from three FBI agents in their individual capacities. While no fact findings have been made, we summarize what are set forth as the pertinent facts in the appellants' brief, accepting these as the version most favorable to appealability.

In the late 1960's Kenyatta was attending Tougaloo College, in Tougaloo, Mississippi, on the outskirts of the city of Jackson. He also served as editor of the Hinds County Freedom Democratic Newspaper, which published an article urging blacks to arm themselves and to protect their community with violence if necessary. The article also contained instructions for making a Molotov cocktail.

In the latter part of 1967, one or more of the agents recommended that Kenyatta's name be placed on the FBI Agitator Index, a list designed to provide FBI field officers with a summary of information on individuals "who had established a pattern of travelling interstate to participate in demonstrations or rallies where violence had occurred." The three agents later participated in preparing and sending a letter to Kenyatta that falsely purported to be from the Tougaloo College Defense Committee, a student organization. The letter advised Kenyatta that his involvement in criminal activities was inconsistent with the kind of conduct the Committee encouraged and directed him to "remain away from [the] campus until such time as your conduct and general demeanor reach the desired level." It also warned that, if he did not, "we shall consider contacting local authorities regarding some of your activities or take other measures available to us which would have a more direct effect and which would not be as cordial as this note." Kenyatta alleged that this letter caused him to leave Mississippi.

Kenyatta was also involved in the Jackson Human Rights project. The Jackson City Prosecutor undertook to investigate the project on behalf of the Episcopal Church, which funded the project. Kenyatta contends that the three FBI agents made derogatory and false statements about him to the City Prosecutor. The FBI agents' brief refers to this episode as "an uncontested event," but, while they contend that they provided the City Prosecutor with no information and merely referred him to local law enforcement officers and local community members, Kenyatta contends that the agents themselves in addition disseminated derogatory information about him to both the City Prosecutor and another person. He contends that as a result of these actions he was injured by being deterred and chilled in his lawful activities and by being maligned and discredited.

Kenyatta also contends that his constitutional right to equal protection of the law was abridged because the FBI counter-intelligence program, which prompted the agents' activities, was "infused" by "racial animus" because it was directed only at black civil rights activists.

Following extensive discovery, the defendants moved for summary judgment in 1978, one year after the suit was filed. They contended that the suit was barred by the statute of limitations, that Kenyatta had failed to state claims for which relief could be granted, and that they were absolutely immune to the state tort claims

---

1. *See* 28 U.S.C. § 1291.

joined as pendent to the federal constitutional claims.[2]

The district court denied the motion but certified its ruling as appealable under 28 U.S.C. § 1292(b). We denied leave to take an interlocutory appeal in an unpublished order issued by Judges Ainsworth, Garza, and Sam D. Johnson. In 1982, the Supreme Court decided *Harlow v. Fitzgerald*,[3] exacting only an objective good-faith test for qualified immunity. The agents then renewed their motion for summary judgment, asserting both absolute and qualified immunity. The district court denied the motion and again certified its order as appealable. We again rejected the attempt to appeal the order as interlocutory under § 1292(b) in an unpublished order issued by Judges Brown, Tate, and Higginbotham. The agents now contend that they are entitled to appeal of right under 28 U.S.C. § 1291 because the order, while interlocutory in form, is final in effect.

The 1983 opinion of the district judge on the renewed motion for summary judgment concerns only "the defendants' entitlement to qualified immunity." The court concludes, "we hold that defendants are not entitled to the qualified immunity enunciated in *Harlow*. The defendants' motion for summary judgment on the issue of qualified immunity from liability is denied." While the order simply denies the motion for summary judgment, it is apparent that the district judge had simply not considered the issue of absolute immunity at that time; for, in the opinion certifying the order for interlocutory appeal, the court again refers only to the qualified immunity issue. We first address the issue of appealability of the 1983 ruling on qualified immunity. Then we turn to appealability of the 1979 ruling on absolute immunity.

## II.

■ Under the Judiciary Act of 1789 federal appellate jurisdiction is confined to appeals from "all final decisions." That policy has remained the fundament of federal appellate jurisdiction.[4] The rule permitting appeals only from final judgments "is an historic characteristic of federal appellate procedure."[5] It represents the "firm congressional policy against interlocutory or 'piecemeal' appeals and courts have consistently given effect to that policy."[6]

■ This rule is not arbitrary but functional. It helps to preserve the respect due trial judges by minimizing appellate-court interference.[7] It "reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals" and it hence is "crucial to the efficient administration of justice."[8]

■ In what has been called a "narrow exception" to that rule, interlocutory appeals are permitted in a small class of cases in which an order, though technically not final, nonetheless is so collateral as to be effectively unreviewable on appeal from the final judgment.[9] The FBI agents seek

---

**2.** They explain that they then raised only the absolute immunity defense because at that time qualified immunity could be determined only by showing good faith, *citing Reimer v. Short*, 578 F.2d 621 (5th Cir.1978), *cert. denied sub nom. Adams v. Reimer*, 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 935 (1979).

**3.** 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**4.** The rule is now incorporated in 28 U.S.C. § 1291.

**5.** *Flanagan v. United States*, —— U.S. ——, ——, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288, 293 (1984), *quoting Cobbledick v. United States*, 309 U.S. 323, 324, 60 S.Ct. 540, 541, 84 L.Ed. 783, 784 (1940).

**6.** *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651, 657 (1977).

**7.** *Flanagan v. United States*, —— U.S. ——, ——, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288, 293 (1984).

**8.** *Id. See also, Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374–75, 101 S.Ct. 669, 673, 66 L.Ed.2d 571, 578–579 (1981).

**9.** *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536 (1949). *See, e.g., Constructora Subacuatica Diavaz v. M/V Hiryu*, 718 F.2d 690, 692–93 (5th Cir.1983).

to fit their appeal within that class on the basis that the denial of summary judgment recognizing qualified immunity subjects the government official invoking that defense to a trial on the merits despite a central purpose of the defense, the protection it affords against not only ultimate liability but also against exposure to trial.

This court, like every other court that has considered the issue, has concluded that the denial of absolute immunity is immediately appealable.[10] The "purpose behind absolute immunity is as much to protect the relevant persons from a trial on their actions as it is to protect them from the outcome of trial."[11] Therefore those who enjoy absolute immunity are entitled to defeat the suit at the outset.[12] "To wait until after the trial for the appellate review of claims of absolute immunity subverts a basic rationale of the doctrine ...."[13] Similarly, the mistaken rejection of a defense of double jeopardy to a criminal charge subjects the accused to a trial that the Constitution forbids; hence such an order is immediately appealable.[14] For the same reason, legislators are entitled to immediately appeal denial of a motion to dismiss based on the Speech or Debate clause.[15]

In some measure the policy of qualified immunity is designed to protect government officials not only from being cast in judgment but from being exposed to trial. But the very reason for the distinction between those officials who enjoy absolute immunity and those whose protection is qualified is that some officials are entitled to a lesser measure of protection. Their actions may subject them to liability unless undertaken with reasonable regard for federal statutory and constitutional rights.

In *Harlow* the Supreme Court simplified the qualified immunity defense, jettisoning the previous requirement of good faith, and announced a simple objective standard: whether a defendant violated "clearly established" law at the time of his alleged constitutional violation.[16] It reformulated the test because the prior "good faith" test was thought to raise an inherent question of fact requiring resolution at trial, a result that was "incompatible with [the Court's] admonition in *Butz* that insubstantial claims should not proceed to trial."[17] The *Harlow* Court recognized that significant societal costs attend subjecting federal officials to the "risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service."[18] It sought to alleviate those costs by facilitating summary disposition at the thresh-

---

10. *Williams v. Collins,* 728 F.2d 721 (5th Cir. 1984); *Metlin v. Palastra,* 729 F.2d 353 (5th Cir.1984) (qualified immunity ruling reviewed incident to review of absolute immunity ruling); *see Harlow v. Fitzgerald,* 457 U.S. at 806 n. 11, 102 S.Ct. at 2732 n. 11, 73 L.Ed.2d at 402 n. 11; *Nixon v. Fitzgerald,* 457 U.S. 731, 742–743, 102 S.Ct. 2690, 2698, 73 L.Ed.2d 349, 358–359 (1982); *Helstoski v. Meanor,* 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30, 35–37 (1979). *Accord Evans v. Dillahunty,* 711 F.2d 828, 830 (8th Cir.1983); *Chavez v. Singer,* 698 F.2d 420, 421 (10th Cir.1983); *McSurely v. McClellan,* 697 F.2d 309, 315–316 (D.C.Cir.1982); *Forsyth v. Kleindienst,* 599 F.2d 1203, 1207–09 (3d Cir. 1979), *cert. denied sub nom. Mitchell v. Forsyth,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). *See also Bever v. Gilbertson,* 724 F.2d 1083, 1086 (4th Cir.1984).

11. *Briggs v. Goodwin,* 569 F.2d 10, 59 (D.C.Cir. 1977) (Wilkey, J., dissenting), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Forsyth v. Kleindienst,* 599 F.2d at 1207–08.

12. *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128, 137 n. 13 (1976). *Accord Williams v. Collins,* 728 F.2d 721, 726 (5th Cir.1984).

13. *Briggs v. Goodwin,* 569 F.2d at 59; *Williams v. Collins,* 728 F.2d at 726.

14. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

15. *Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979).

16. 457 U.S. at 816–817, 102 S.Ct. at 2738–39, 73 L.Ed.2d at 409–410. *See McSurely v. McClellan,* 697 F.2d 309, 316 (D.C.Cir.1982).

17. *Harlow v. Fitzgerald,* 457 U.S. at 815–16, 102 S.Ct. at 2737, 73 L.Ed.2d at 408–409.

18. 457 U.S. at 816, 102 S.Ct. at 2738, 73 L.Ed.2d at 409.

old. Thus, insubstantial claims might be resolved quickly with minimal impact on the functioning of federal officials.

▓ It does not follow, however, that, because insubstantial claims are to be summarily rejected, all denials of summary judgment to government officials are immediately appealable. The denial of a claim that does not encompass the right to be free from trial is not immediately appealable.[19] The expense and strain of à trial are vicissitudes that affect every party, plaintiff or defendant, who is denied a summary judgment and then must undergo a trial.[20] The trial itself transgresses the interests protected by qualified immunity only if the claim is insubstantial, and the defendant-official has nothing to appeal if he has failed to persuade a district judge that his defense is well-founded. Judges are not infallible, and errors may be anticipated in application of the *Harlow* standard like any other. Nevertheless, few if any district judges are likely to mistake insubstantial claims for violations of clearly established rights, far too few to invoke the *Harlow* policy of preventing the risk of litigation from deterring good candidates from seeking office or good office holders from performing their duties. In our litigious society, to suppose that some might

abstain from valuable public service for fear that they will be subjected to the expense of frivolous litigation is sensible; that legitimate activity will be curtailed by the inability of trial judges to separate frivolous claims from clear violations of statutory and constitutional rights without appellate second-guessing is less likely.

The qualified-immunity defense also differs from absolute immunity in its more intimate relationship with the merits.[21] Absolute immunity may be determined solely on the basis of the official status of the defendant and whether he acted in the course of that duty. Qualified immunity cannot be decided without a complete determination of the nature of both the wrongful act and the law applicable at the time it was committed, in addition to those factors.

The unanimity among circuit courts in holding the denial of absolute immunity immediately appealable has therefore not carried over to the qualified immunity defense. While three courts of appeals, the District of Columbia Circuit and the First and Eighth Circuits, have held that all pretrial orders denying qualified immunity are immediately appealable under the collateral order doctrine,[22] the Third and Fourth Circuits have denied interlocutory appeal.[23]

---

**19.** *E.g., United States v. MacDonald*, 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18, 27 (1978) (speedy trial right); *United States v. Gregory*, 656 F.2d 1132, 1136 (5th Cir.1981) (denial of motion to dismiss for vindictive prosecution immediately appealable only if right would be lost in particular case if appeal awaited final judgment); *United States v. Levine*, 658 F.2d 113, 120 (3d Cir.1981) (federal statute of limitations). *See* Note, Federal Interlocutory Appeal of Vindictive Prosecution Claims, 50 Geo.Wash. L.Rev. 485, 488 (1982).

**20.** *United States v. Gregory*, 656 F.2d at 1136.

**21.** The facts on which the merit of that defense must be determined are, as Judge Higginbotham has noted, "more clearly entwined with the merits." *Williams v. Collins*, 728 F.2d 721, 726 n. 6 (5th Cir.1984).

**22.** In *McSurely v. McClellan*, 697 F.2d 309, 316 (D.C.Cir.1982), the court held that "appellate review of a denial of a motion for summary disposition must be available to ensure that government officials are fully protected against

unnecessary trials under qualified immunity on the same basis as for absolute immunity." In *Evans v. Dillahunty*, 711 F.2d 828, 830 (8th Cir.1983), the Eighth Circuit agreed that, when the essential facts are not in dispute and the immunity determination is a question of law, orders denying qualified immunity are immediately appealable. In *Krohn v. United States*, 742 F.2d 24 (1st Cir.1984), the court held that, if there is a "plausible claim" to qualified immunity, the denial of the claim is immediately appealable.

**23.** In *Bever v. Gilbertson*, 724 F.2d 1083 (4th Cir.1984), petition for cert. filed, 53 U.S.L.W. 3021 (U.S. June 20, 1984) (No. 84–25), the court declined jurisdiction in part because the action also sought injunctive relief and a trial would therefore have been necessary regardless of qualified immunity. The court also observed, however, that "one must read much into [*Harlow*] to conclude that the Supreme Court ... intended that denials of such motions should be immediately appealable." The Third Circuit denied a qualified immunity appeal in *Forsyth v. Kleindienst*, 729 F.2d 267, 273–74 (3d Cir.1984),

■ The view taken by the Third and Fourth Circuits has even firmer foundation when the basis for appealability of interlocutory orders is considered. To be appealable as final such orders must determine claims "separable from, and collateral to, the rights [or defenses] asserted in the action too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." [24] While appealability of collateral orders is not limited to cases that present "a serious and unsettled question," [25] the importance of the legal issues presented on appeal is a factor to be considered.[26]

■ In the present case, Kenyatta's claims and the asserted defenses are inseparably intertwined, a situation that, as we have already indicated, is typical. There is not only one claim, but several. Whether or not the principles on which each is to be determined were established in 1967 turns on the nature of each claimed violation and the different decisions relative to the several first amendment claims and the different equal protection argument.

Indeed, if we were to undertake review on the merits, we would be obliged to find that there are genuine issues of material fact concerning what the FBI agents did as well as legal disputes about how well established the law was when those deeds were done. As the magistrate found, "while the broad, underlying facts as recited above are uncontested, many facts more subtle (especially in the area of intent and motive), but critical to a just determination of this case, are contested and genuinely in issue." Kenyatta alleges, and has gathered some evidence in support, that the actions taken by the agents manifest racial animus and that they were undertaken in order to disrupt and inhibit Kenyatta's advocacy on account of its content. The agents, by contrast, contend that their actions were motivated solely by legitimate law enforcement purposes. They argue, however, that their state of mind is wholly irrelevant to their immunity. In this conclusion they are simply mistaken. As we have explained above, the *Harlow* Court eliminated the subjective prong from analysis of qualified immunity; what remains is the question whether the agents' actions violated rights clearly established at the time. Because the Court did not thereby purge substantive constitutional doctrine of all subjective issues, it did not entirely eliminate subjective inquiry from every qualified immunity analysis: some rights, including those Kenyatta seeks to vindicate, might be violated by actions undertaken for an impermissible purpose but not by the same actions undertaken for permissible purposes.[27]

In addition, the agents allege that, if their actions violated rights clearly established at the time, they are nevertheless immune under *Harlow* because, due to extraordinary circumstances, they neither

---

petition for cert. filed, —— U.S.L.W. —— (U.S. —— 1984) (No. ——), despite a vigorous dissent by Judge Weis.

**24.** *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536 (1949).

**25.** *Id.* at 547, 69 S.Ct. at 1226, 93 L.Ed. at 1536. We held appeals not limited to such cases in *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1024 n. 5 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

**26.** *Bennett v. Behring Corp.,* 629 F.2d 393 (5th Cir.1980); *Armstrong v. McAlpin,* 625 F.2d 433, 439 n. 11 (2d Cir.1980), *judgment vacated,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).

**27.** *See, e.g., Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed. 597 (1976) (purposeful racial discrimination necessary to constitute fourteenth amendment violation); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (class based animus essential for action under § 1985(3)); *Wright v. Georgia,* 373 U.S. 284, 292, 83 S.Ct. 1240, 1245, 10 L.Ed.2d 349, 355 (1963) (police officer's intention to enforce racial discrimination violates equal protection). As Justices Brennan, Marshall and Blackmun point out in their concurring opinion in *Harlow,* its standard "would not allow the official who *actually knows* that he was violating the law to escape liability for his actions, even if he could not 'reasonably have been expected' to know what he actually did know." 457 U.S. at 820, 102 S.Ct. at 2740, 73 L.Ed.2d at 411. (Emphasis in original.)

knew nor should have known that their actions violated Kenyatta's rights. By raising this alternative argument for immunity, the agents themselves create two issues of fact, one objective and one subjective: were there any extraordinary circumstances, and, if there were, did they make the agents ignorant of the constitutional implications of their actions? Kenyatta has controverted the subjective issue by presenting some evidence that tends to make the agents' actual ignorance less likely. By creating the issue for Kenyatta to controvert, the agents surrendered part of the protection from litigation that the objective *Harlow* test might have offered them.

The present case involves a legal question of importance: the appealability of the order. If, however, we hold denials of summary judgment appealable per se, the right to appeal will be assured in a large number of cases that present no significant legal issues, for in many actions brought against state officials under 42 U.S.C. § 1983, as well as in actions brought against federal officials for violation of federal constitutional and statutory rights, the defense of qualified immunity is raised. Many of these involve only the application of settled principles, not important, unresolved legal issues.

Like other courts, we consider it important that government officials be protected from the mere litigation of insubstantial claims. But, as the Third Circuit has said, "that concern over subjecting government officials to unwarranted claims is best handled through adjustment of the substantive rules of law, as the Supreme Court has recently done, and not by changing the established practice of limiting appellate review of interlocutory decisions."[28] To consider the interlocutory appeal in this case would be, as in most, a futile exercise

for, if we did so, we would be able only to remand for determination of the facts essential to decision.

### III.

The agents' first motion for summary judgment in December, 1978, asserted that they were absolutely immune from the plaintiff's state-law causes of action. The district court denied the motion in its order of December 21, 1979. They did not appeal that decision. The 1983 renewed motion for summary judgment purported to reassert the same state-law absolute immunity defense that had been previously rejected by the district court. The agents made no new arguments, nor did they contend that the facts or the state law had changed in any way since 1979. They relegated their discussion of this issue to a one-sentence footnote in their supporting memorandum.

The agents contend that they are now entitled to appeal the 1979 denial of their absolute immunity defense. They contend that interlocutory appeals are permissive and are not subject to the time limit set on appeals of right in Fed.R. App.P. 4. The conclusion is simply mistaken. "The procedure for taking an appeal from an interlocutory order that is appealable as of right is precisely the same as that for taking an appeal from a final judgment. The appeal must be taken in the time provided by Rule 4 of the Federal Rules of Appellate Procedure. An interlocutory appeal need not be taken merely because it is authorized, but if it is authorized, it must be timely taken or the right to take it will be lost, and no appeal will be taken until final judgment or until the entry of some subsequent appealable order." 9 J. Moore, B. Ward, J. Lucas, Moore's Federal Practice ¶ 110.21 (footnotes omitted).[29] The ap-

---

**28.** *Forsyth v. Kleindienst,* 700 F.2d 104, 110 (3d Cir.1983) (opinion on grant of stay) (Sloviter, J., stating in dissent the position ultimately adopted by the court, 729 F.2d at 273–74).

**29.** *Henry v. First National Bank of Clarksdale,* 444 F.2d 1300, 1305 n. 4 (5th Cir.1971), *cert. denied sub nom. Henry v. Claiborne Hardware*

*Co.,* 405 U.S. 1019, 92 S.Ct. 1284, 31 L.Ed.2d 483 (1972); *Winfield v. St. Joe Paper Co.,* 663 F.2d 1031, 1032 (11th Cir.1981); *Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc.,* 579 F.2d 786, 790 (3d Cir.1978); *Donaldson v. Pillsbury Co.,* 529 F.2d 979, 980 & n. 1 (8th Cir.1976), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *United States v.*

peal is permissive only in the sense that, if it is not taken, the ruling remains subject to review on the appeal from the final judgment.[30] If the absolute immunity claims were subject to interlocutory appeal, the appeal should have been taken after the district court's December, 1979, denial of that claim. In addition, we see no reason to make dismissal of a pendent state-law claim the fulcrum by which the federal claims, which alone give us jurisdiction, become appealable.

The fact that the defendants nominally reiterated their state-law absolute immunity defense in their second motion for summary judgment, which was never in fact ruled on by the court presumably because the issue had been previously decided and was mentioned by the agents only in passing, does not thereby give them a second opportunity to appeal.

### IV.

 The FBI agents object to an award of costs to Kenyatta. They assert correctly that appellate jurisdiction has been an issue in this appeal from the outset. Indeed, the appellants briefed the jurisdictional question in their opening appeal brief. Nevertheless, rather than simply moving to dismiss, Kenyatta filed a responding brief, thereby incurring costs that would not have been incurred had he moved to dismiss before filing his brief (or even before the agents filed their appellate brief since the jurisdictional question was obvious when they sought certification and filed a notice of appeal). For this reason, we hold that Kenyatta is not entitled to the cost of printing the brief on the merits. He is manifestly entitled to all other costs.

For the reasons given, the appeal is DISMISSED. Costs are to be taxed to appellants except the costs of printing Kenyat-

ta's brief on the merits, which are to be borne by Kenyatta.

---

*Hankish,* 462 F.2d 316, 318 (4th Cir.1972); *Dahlen v. Kramer Mach. and Engineering Products Co.,* 303 F.2d 293, 294–95 (10th Cir.1961); *Stiller v. Squeez-a-Purse Corp.,* 251 F.2d 561, 563 (6th Cir.1958). See also 15 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3911 at 498.

**30.** *In re Chicken Antitrust Litigation American Poultry,* 669 F.2d 228, 235–36 (5th Cir.1982); 9 J. Moore, Moore's Federal Practice ¶ 110.18; 15 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 3911 at p. 230 n. 82 (Supp. 1984).