**Anne POWERS, Plaintiff,**

**v.**

**John T. LIGHTNER, d/b/a Lightner Auto Sales, Defendant, Third-Party Plaintiff-Appellee,**

**v.**

**Barry JONES and Bruce White, Third-Party Defendants-Appellants.**

No. 84–2312.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1984.

Decided Jan. 16, 1985.

Rehearing and Rehearing En Banc Denied April 30, 1985.

---

Douglas Letter, Dept. of Justice, Civil Division, Washington, D.C., for plaintiff.

John A. Dienner, III, Pierce, Lydon, Griffin & Montana, Chicago, Ill., for defendant, third-party plaintiff-appellee.

Before FLAUM and PELL, Circuit Judges, and WISDOM, Senior Circuit Judge.[*]

WISDOM, Senior Circuit Judge.

The question this case presents is the appealability of the denial of a request for summary judgment on qualified immunity grounds in favor of two federal officials sued in their individual capacities. The Circuits are evenly divided on this issue. Here the third party plaintiff seeks damages from two federal officials under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982), for the defendants' actions in an FBI undercover operation. We conclude that qualified immunity protects government officials only against insubstantial lawsuits and that protection is adequately afforded when the district court has determined that the suit should proceed to trial, because the officials knew or reasonably should have known that the challenged action would violate constitutional rights clearly established at the time the action occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v.*

*Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). We hold that such an interlocutory judgment is not appealable. Accordingly, we dismiss the appeal.

**I.**

From October 1980 through March 1982 the FBI conducted an undercover operation in St. Louis (Operation Recoupe) to penetrate and destroy several large-scale stolen car and resale criminal enterprises.[1] As part of Recoupe, the FBI opened an auto salvage business near St. Louis and purchased auto wrecks at fair market value from cooperating insurance companies. These wrecks had valid titles and vehicle identification number (VIN) tags. The FBI then sold the wrecks with the VINs and titles—and sometimes only the VINs and titles—to targeted subjects suspected of running retagging operations.

The VIN and title purchasers stole cars that matched the description of the car originally associated with the VIN and placed the purchased VIN tags on the stolen cars, giving them a legitimate appearance. The retaggers then distributed the cars to auto brokers or auctioneers, and the cars were bought by used car dealers. The dealers sold the retagged stolen cars to unwitting members of the public.

In December 1980 the St. Louis FBI office also had an ongoing investigation of Leroy Morton, a St. Louis automobile dealer suspected of running a stolen car and retagging operation. David Lauck, a used car dealer, approached the FBI and offered to act as an informant regarding Morton's organization. The FBI and the St. Louis U.S. Attorney's Office decided to use Lauck because they thought that, in addition to providing evidence against Morton and his associates, he might be able to produce information helpful for Recoupe. Lauck was at all times unaware of Operation Recoupe.

---

[*] The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. Recoupe was approved in advance by FBI headquarters in Washington, D.C.

Lauck sold a number of cars on Morton's instructions through G.T.O. Auto Brokers, Inc. in Missouri. G.T.O. then sold the cars through Tremont Auto Auction, Inc. in Illinois. Coincidentally, some of the cars Lauck distributed for Morton had VINs and titles originally provided by the FBI under Recoupe.

In June 1981, FBI Special Agent Barry Jones furnished a VIN tag and title for a Chevrolet Monte Carlo to Lauck. While the car was at Tremont Auto Auction for sale, an Illinois State Trooper noticed it and suspected that it was stolen. Lauck informed the FBI of the State Trooper's interest in the car. The FBI became concerned that seizure of the car would lead to suspicion of Lauck by Morton and his associates and would put Lauck's life in danger. FBI Special Agent Jones telephoned the Illinois state police and asked them to return the Monte Carlo to the auction site and to state that the car was not stolen. The state police complied.

Lightner Auto Sales purchased the Monte Carlo from Tremont Auto Auction, not knowing that the car was stolen, and then resold it to Anne Powers. The Monte Carlo was later seized and returned to its original owner.[2] Powers sued Lightner for a refund. Lightner filed a third party action in state court against Tremont Auto Auction, the U.S. Attorney General, Special Agent Jones, Assistant U.S. Attorney Bruce White, Lauck, several Illinois police officers, and others, seeking damages under 42 U.S.C. § 1983 for deprivation of property without due process of law and as a tort under state law. Lightner also alleged a cause of action against the federal defendants under RICO.

The federal defendants removed the action to federal court and moved to dismiss the third party complaint on several grounds. The district court granted the motion as to the Attorney General but denied it as to Special Agent Jones and Assistant U.S. Attorney White.[3] Jones and White thereafter filed a renewed motion to dismiss or for summary judgment. The court ruled that Jones and Smith were entitled to absolute immunity from the state tort law claims, but denied White's claim of absolute prosecutorial immunity. The court ruled that Jones and White were entitled only to qualified immunity on the federal claims, and denied their request for summary judgment with respect to those claims. The federal defendants appeal from those portions of the order denying their request for summary judgment on the ground of qualified immunity.

## II.

This Court has not ruled upon the question whether one may take an interlocutory appeal from the denial of a claim of qualified immunity. Two Courts of Appeals—in the First and the D.C. Circuits—have held that all pretrial orders denying qualified immunity are immediately appealable. *Krohn v. United States*, 742 F.2d 24, 27–29 (1st Cir.1984); *McSurely v. McClellan*, 697 F.2d 309, 315–16 (D.C.Cir.1982). These courts concluded that the purpose of immunity articulated in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)—to shield government officials from the risks of trial and the attendant distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service—applies equally as strongly to officials entitled to qualified immunity as to those entitled to absolute immunity and that appellate review must be available in both cases to ensure that officials are fully protected against unnecessary trials. The

---

**2.** Earlier, in May 1981, Dixon Police Department officers had become suspicious of a Pontiac Firebird Trans Am on Lightner's lot. They seized the car, examined it, and consulted with the Illinois state police. When the FBI learned of this seizure through Lauck, it became concerned for Lauck's safety because the Trans Am was a car that Lauck had been asked to sell by the Morton group. The FBI requested the Illinois police to return the car to Lightner's lot and to say that it was not stolen. The police did so, and Lightner eventually sold the car in Illinois.

**3.** *Lightner v. Tremont Auto Auction, Inc.*, 564 F.Supp. 1112 (N.D.Ill.1983).

Court of Appeals for the Eighth Circuit has concluded that denials of claims of qualified immunity are immediately appealable when the essential facts are not in dispute [4] and the determination whether the government official is entitled to immunity is solely a question of law. *Evans v. Dillahunty*, 711 F.2d 828, 830 (8th Cir.1983).

Courts of Appeals in two other circuits—the Third and the Fifth—have ruled that the summary denial of a claim of qualified immunity is not immediately appealable. *Kenyatta v. Moore*, 744 F.2d 1179, 1182–86 (5th Cir.1984); *Forsyth v. Kleindienst*, 729 F.2d 267, 273–74 (3d Cir.1984), *petition for cert. granted*, —— U.S. ——, 105 S.Ct. 322, 83 L.Ed.2d 259 (1984). These courts reasoned that unlike absolute immunity, which protects an official from any trial whatsoever, qualified immunity protects only against insubstantial claims, and such protection is adequately afforded by the trial court's consideration upon a pretrial motion whether the defendant official qualifies under the objective standard for immunity enunciated in *Harlow*. Both courts read *Harlow* as encouraging the summary disposition of insubstantial claims brought against government officials, but not as relaxing the general rule against interlocutory appeals. The Fourth Circuit dismissed an interlocutory appeal of a denial of qualified immunity in *Bever v. Gilbertson*, 724 F.2d 1083 (4th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984) because the action also sought injunctive relief and a trial would therefore have been necessary regardless of qualified immunity and because the appeal did not present a serious and unsettled question of law. The Court noted, however, that "one must read much into [*Harlow*] to conclude that the Supreme Court ... intended that

denials of such motions should be immediately appealable". *Id.* at 1088.

Each of these cases turned on an examination of the scope and purposes of the doctrine of qualified immunity as revised by the Supreme Court in *Harlow*. We turn now to that case and consider its relation to the general rules regarding interlocutory appeals.

### A.

Congress has vested the Courts of Appeals with "jurisdiction of appeals from all *final* decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court". 28 U.S.C. § 1291 (1982) (emphasis added). This requirement of finality " 'is the dominant rule in federal appellate practice' ". *Flanagan v. United States*, —— U.S. ——, ——, 104 S.Ct. 1051, 1057, 79 L.Ed.2d 288, 298 (1984) (quoting 6 Moore, Federal Practice 113 (2d ed. 1953)). It embodies "a firm congressional policy against interlocutory or 'piecemeal' appeals".[5] *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651, 658 (1977).

■ The Supreme Court has recognized a narrow exception to this strict rule of finality, at least in "that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated". *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). To fall within the collateral order doctrine of *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from

---

**4.** The Court stated that this criterion "may be satisfied if the trial court makes specific findings of fact, or if the parties stipulate to the relevant facts". *Evans v. Dillahunty*, 711 F.2d 828, 830 (8th Cir.1983).

**5.** The rule of finality "helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they

must make in the pre-judgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the administration of justice." *Flanagan v. United States*, —— U.S. ——, ——, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288, 293 (1984).

the merits of the action, and be effectively unreviewable from a final judgment. *E.g., Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Rohrer, Hibler & Replogle, Inc. v. Perkins,* 728 F.2d 860, 862 (7th Cir.1984). Like all exceptions to the finality requirement of § 1291, the collateral order doctrine should be construed narrowly. *Rohrer,* 728 F.2d at 862.

Many courts have concluded that the denial of absolute immunity is immediately appealable under the *Cohen* doctrine.[6] These decisions reason that absolute immunity protects the right not to be subjected to trial at all, not just to an unfavorable outcome, and that right is irretrievably lost if appellate review must await final adjudication on the merits.[7] We must consider, then, the scope of the right encompassed by qualified immunity, as articulated in *Harlow,* and decide whether that right would effectively be lost absent an immediate appeal. We conclude that because the rights encompassed by the doctrines of absolute and qualified immunity are not coextensive with respect to subjection to trial, the lesser right afforded by qualified immunity does not necessitate the right to interlocutory appeal that absolute immunity does.

### B.

Before *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the defense of qualified immunity had both a subjective and an objective component. Under the objective component, qualified immunity was defeated if the defendant official "knew or reasonably should have known that the action he took within his sphere of official responsibility would vio-

late the constitutional rights of the [plaintiff]".[8] Under the subjective component, qualified immunity was defeated if the official "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury".[9] In *Harlow* the Court noted that the subjective element had frequently proved incompatible with the Court's admonition in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), that insubstantial claims against government officials exercising discretionary functions should not go to trial, because an official's subjective good faith was often considered a question of fact that many courts regarded as inherently requiring resolution at trial.

Accordingly, the Court dropped the subjective component and announced that qualified immunity is to be judged by a simple objective standard: whether the acts of the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known". 457 U.S. at 818, 102 S.Ct. at 2738. Because this test is defined "essentially in objective terms", *id.* at 819, 102 S.Ct. at 2739, the government urges us in this case that the availability of qualified immunity is purely a question of law and, like absolute immunity, should be immediately appealable.

We cannot agree. First, this Court has denied interlocutory appeals of rulings on questions of law, even when the effect of those rulings was to subject the appellant to trial. In *Freeman v. Kohl & Vick Machine Works, Inc.,* 673 F.2d 196 (7th Cir. 1982), we held that we had no jurisdiction to review a district court's conflict of laws determination, even though that determination had the effect of denying the appellant's asserted immunity from suit under

---

6. *Williams v. Collins,* 728 F.2d 721 (5th Cir. 1984); *Evans v. Dillahunty,* 711 F.2d 828 (8th Cir.1983); *Chavez v. Singer,* 698 F.2d 420 (10th Cir.1983); *McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir.1982); *Forsyth v. Kleindienst,* 599 F.2d 1203 (3d Cir.1979), *cert. denied sub nom. Mitchell v. Forsyth,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). *See also Bever v. Gilbertson,* 724 F.2d 1083 (4th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984) (dicta).

7. *See Williams,* 728 F.2d at 726; *Chavez,* 698 F.2d at 421; *Bever,* 724 F.2d at 1086; *McSurely,* 697 F.2d at 315–16; *Forsyth,* 599 F.2d at 1208–09.

8. *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

9. *Id.*

the law of the state alleged by the appellant to be governing. In *Smith v. Benedict*, 279 F.2d 211 (7th Cir.1960), we held that the denial of a defense under the statute of limitations was not appealable under the *Cohen* doctrine.

■ Second, the rights encompassed by the doctrines of qualified and absolute immunity are not coextensive. The "purpose behind absolute immunity is as much to protect the relevant persons from a trial on their actions as it is to protect them from the outcome of trial".[10] Those who enjoy absolute immunity are therefore entitled to defeat the suit at the outset. *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128, 137 n. 13 (1976). By contrast, whether qualified immunity protects against trial depends upon the circumstances of the official's actions. The official is protected only against "insubstantial claims"—i.e., claims that do not involve the violation of "clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. But when clearly established rights are involved, qualified immunity does not protect against trial:

> [W]e see no substantial basis for holding ... that executive officers generally may with impunity discharge their duties in a way that is known to them to violate the United States Constitution or in a manner that they should know transgresses a clearly established constitutional rule.

*Butz*, 438 U.S. at 507, 98 S.Ct. at 2911. Because qualified immunity does not entail a right to be free from trial, we cannot accept the government's argument that denials of qualified and absolute immunity should necessarily be treated the same simply because both forms of immunity respond to the dangers of exposing government officials to the risk of trial.

■ Given that qualified immunity does not provide an absolute right not to be

subjected to trial, we must ask whether a right to immediate appeal is necessary to afford the lesser protection entailed by qualified immunity. We hold that it is not for three reasons. First, we agree with the Fifth Circuit that

> [t]he trial itself transgresses the interests protected by qualified immunity only if the claim is insubstantial, and the defendant-official has nothing to appeal if he has failed to persuade a district judge that his defense is well-founded. Judges are not infallible, and errors may be anticipated in application of the *Harlow* standard like any other. Nevertheless, few if any district judges are likely to mistake insubstantial claims for violations of clearly established rights, far too few to invoke the *Harlow* policy of preventing the risk of litigation from deterring good candidates from seeking office or good office holders from performing their duties.

*Kenyatta v. Moore*, 744 F.2d 1179, 1184 (5th Cir.1984).

Second, *Harlow* noted that qualified immunity was developed as a balance between the interest of providing a realistic avenue for vindication of constitutional rights through damage actions against individual government officials and the public interest in protecting such officials so that they are free to perform their duties properly and without fear of later liability.[11] We are persuaded that a determination of substantiality by the district court will provide adequate protection of government officials and that the slight additional protection afforded by immediate appellate review is not sufficient to outweigh the policies served by the general rule against interlocutory appeals.[12] Persons who have alleged violations of statutory or constitutional rights that the district court has determined are clearly established should be allowed to proceed to trial to vindicate those rights without the considerable delay

---

10. *Briggs v. Goodwin*, 569 F.2d 10, 59 (D.C.Cir. 1977) (Wilkey, J., dissenting), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

11. 457 U.S. at 813–14, 102 S.Ct. at 2736–37.

12. *See supra* note 5.

and additional expense imposed by interlocutory review.

Third, the *Cohen* doctrine, under which denials of absolute immunity have been held appealable, requires that the order determine claims "separable from, and collateral to, the rights asserted in the action". *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225. Claims of qualified immunity are more likely to be inseparably intertwined with the merits of the action. To determine whether an official is entitled to absolute immunity requires only a determination of the official status of the person and a functional analysis of whether the official acted in the course of the duties encompassed by that status. By contrast, "[q]ualified immunity cannot be decided without a complete determination of the nature of both the wrongful act and the law applicable at the time it was committed". *Kenyatta v. Moore*, 744 F.2d 1179, 1184 (5th Cir.1984). In many instances, that determination will require the resolution of disputed material facts. Indeed, in some cases the subjective state of mind of the official may be at issue, notwithstanding the *Harlow* objective test, where violations are alleged of constitutional rights that depend upon the state of mind of government officials. See, for example, *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), holding that only purposeful racial discrimination constitutes a violation of the Fourteenth Amendment. We conclude that under *Cohen* the right to qualified immunity is not clearly "separable from" and "collateral to" the rights asserted in the action, as is the right to absolute immunity.[13]

### III.

We conclude that the protection against insubstantial lawsuits embodied in the doctrine of qualified immunity is adequately afforded when the district court has determined that the suit should proceed to trial because the defendant official knew or reasonably should have known that the challenged conduct would violate statutory or constitutional rights clearly established at the time the conduct occurred. Qualified immunity grants no absolute right not to be subjected to trial, and we conclude that the additional protection that would be afforded to government officials by the right to take an interlocutory appeal does not outweigh the need to avoid the delays and costs of piecemeal litigation. We hold that pretrial denials of qualified immunity are not immediately appealable.

The appeal is DISMISSED.

---

13. We agree that to consider the interlocutory appeal would in many cases be "a futile exercise for, if we did so, we would be able only to remand for determination of the facts essential to decision". *Kenyatta*, 744 F.2d at 1186.