PAN EASTERN EXPLORATION CO. &
Anadarko Petroleum Corp.,
Plaintiffs-Appellees,

v.

HUFO OILS, et al., Defendants,

Canadian Commercial Bank, Price Waterhouse Limited & PW Liquidators,
Inc. Defendants-Appellants.

No. 86–1437.

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1986.

Marvin S. Sloman, William B. Dawson, Bruce W. Collins, Rebecca P. Adams, Dallas, Tex., James L. Stone, Stephen W. Seifert, Denver, Colo., for defendants-appellants.

Keith E. Kaiser, A. Michael Ferrill, San Antonio, Tex., for plaintiffs-appellees.

Before WISDOM, RUBIN, and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents two question: first, whether the district court should dismiss the claims against the Canadian defendants in deference to the stay order of a Canadian winding-up court under principles of international comity and, second, whether this Court has jurisdiction to consider an appeal of the district court's order denying dismissal and setting the case for trial. Because we hold that we do not have jurisdiction to hear this appeal, we do not answer the first question and, accordingly, dismiss the appeal.

I.

In 1983, Canadian Commercial Bank lent fifteen million dollars to Ted True, Johnnie Sue True, and Ted True, Inc. to develop oil leases in Texas. Canadian Commercial, a Canadian-chartered bank, made the loan through its licensed agency in California.

In return for the loan, the Trues granted the Canadian Commercial a security interest in their leases. The following year, the Trues became bankrupt. Canadian Commercial later appeared in the bankruptcy proceedings in the Northern District of Texas to assert its security interest in the Trues's leases.

Pan Eastern Exploration and Anadarko Petroleum Corporation also appeared in the True bankruptcy proceeding. They owned natural gas leases in the same fields in which the Trues held oil leases. They alleged that the Trues had illegally converted natural gas from the fields and requested injunctive relief. Treating their request as a motion to lift the automatic stay of bankruptcy, the bankruptcy court entered an order in October of 1985 to allow Pan Eastern and Anadarko to file an action asserting their claims in another court.[1]

Meanwhile, Canadian Commercial also became bankrupt. In September of 1985, a petition was filed in the Court of Queen's Bench of Alberta, Canada to liquidate the bank under the Canadian Winding-Up Act. The Canadian court appointed Price Waterhouse, Ltd.[2] as provisional liquidator and issued a stay order enjoining all proceedings against the bank without leave of the court. Concurrently, the Superintendent of Banks of California took action against the bank's California offices and seized its assets there. Price Waterhouse contested this seizure and later reached a settlement with the Superintendent by which the assets of the bank were transferred to Price Waterhouse for liquidation with the proceeds to be returned to the Superintendent after certain expenses and preferred creditors were paid.

Back in Texas Pan Eastern and Anadarko filed their claims against the Trues in the Western District of Texas. Later, in March of 1986, they amended their complaint to name the Canadian defendants as co-defendants, alleging that the bank was a participant in the Trues's scheme to unlawfully convert natural gas.[3] They also filed a claim with the Superintendent in California against the bank's assets.[4] Citing the stay order of the Canadian court and the concerns of international comity, the Canadian defendants moved to dismiss the action against them. The district court denied the motion. From this denial, the Canadian defendants appeal.

## II.

The jurisdiction of courts of appeals is limited to that granted by statute. Under 28 U.S.C. § 1291, this Court has "jurisdiction of appeals from all final decisions of the district courts ... except where a direct review may be had in the Supreme Court". Usually, a decision is final only if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment' ".[5] Because the decision of the district court does not end the litigation, its decision is not immediately appealable unless it falls within an exception to the final-judgment rule. The appellants argue that the denial of their motion to dismiss is a final decision under the "collateral order" exception of *Cohen v. Beneficial Industrial Loan Corporation.*[6]

---

1. The order states that it was given with the consent of all parties present, including Canadian Commercial. Record Excerpt, Item 5, Exhibit 5. Canadian maintains that it was present only as an observer interested in protecting its interests.

2. Price Waterhouse formed a subsidiary, PW Liquidators, Inc., to carry out the liquidation of Canadian Commercial. Together, these three entities comprise the Canadian defendants.

3. The complaint alleges liability under the civil RICO provisions of 18 U.S.C. § 1964 and on various state law grounds, including conversion, trespass, conspiracy, and constructive trust.

4. The Superintendent is apparently accepting claims to the proceeds, if any, that it will receive after liquidation of the bank's California assets by Price Waterhouse. Pan Eastern and Anadarko have not filed a claim in Canada.

5. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).

6. 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ The collateral order doctrine is "extraordinarily limited" in its application.[7] Three requirements are necessary to constitute a reviewable interlocutory order: "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment".[8] These requirements serve the intended purpose of section 1291, to prevent piecemeal adjudication of suits and the delays caused by intermittent appeals.[9] Because the collateral order doctrine tends to frustrate this purpose, we have said that our application of the doctrine must be "parsimonious".[10]

■ The first requirement is that the decision of the district court conclusively determine the issue of comity. Generally, a denial of a motion to dismiss does not conclusively determine anything because it merely decides that questions of fact remain to be decided.[11] Even if the movant is entitled to a judgment as a matter of law, a denial of a motion to dismiss is only a "tentative" decision that will later "merge" with the final judgment.[12] Thus, because the district court's decision may be altered before or upon final judgment, it is not conclusive of the issue of comity.[13]

The second requirement of appealability is that the decision resolve an important issue completely separate from the merits. We find that the issue of international comity is not separable. The doctrine of international comity denotes the deference that courts of the United States should give to the acts of foreign governments and their courts.[14] Comity is not a binding obligation, but a discretionary decision that deference will best promote the mutual interests of the United States and the foreign sovereign.[15] Whether the mutual interests of both sovereigns are served by comity depends on the circumstances of each case.[16] In this case, the considerations necessary to decide whether to extend comity to the Canadian stay order are inextricably bound with the facts relevant to the merits. The appellees have alleged that the bank is liable for its activities within the United States in violation of federal and state

7. *Anchor Hocking v. Willamette Ind., Inc.,* 694 F.2d 1041, 1042 (5th Cir.1983).

8. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Thompson v. Betts,* 754 F.2d 1243 (5th Cir.1985).

9. *See Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 401 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 818, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984).

10. *Anchor Hocking v. Willamette Ind., Inc.,* 694 F.2d 1041, 1042 (5th Cir.1983) (quoting *North American Acceptance Corp. Securities Cases v. Arnall, Golden & Gregory,* 593 F.2d 642, 645 (5th Cir.), *cert. denied,* 444 U.S. 956, 100 S.Ct. 436, 62 L.Ed.2d 328 (1979)).

11. *See Anchor Hocking v. Willamette Inc., Inc.,* 694 F.2d 1041, 1042 (5th Cir.); *Coleman by Lee v. Stanziani,* 735 F.2d 118, 120 (3d Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 404 (1984).

12. "The effect of [§ 1291] is to disallow appeal from any decision which is tentative, informal, or incomplete.... Nor does the statute permit appeals, even from fully consummated deci-sions, where they are but steps towards final judgment in which they will merge.". *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225.

13. If comity were to extend a protection from *trial* rather than merely a defense to liability, the denial of a motion to dismiss on grounds of comity may be conclusive because a later decision would be too late to avoid the trial. *See Mitchell v. Forsyth,* — U.S. —, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (denial of claim of qualified immunity is conclusive of the issue). For the reasons we give below, however, we find that comity does not create an immunity from trial.

14. *Hilton v. Guyot,* 159 U.S. 113, 163, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895); *In re Anschuetz & Co., GmbH,* 754 F.2d 602, 608–09 (5th Cir.1985); *Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984).

15. *In re Anschuetz & Co., GmbH,* 754 F.2d 602, 608–09 (5th Cir.1985); *see also In re Messerschmitt Bolkow Blohm GmbH,* 757 F.2d 729, 731–32 (5th Cir.1985).

16. *Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937; *Drexel Burnham*

law.[17] They seek subrogation to the bank's security interest in property being administered by the bankruptcy court in the Northern District of Texas. They maintain that if they obtain a judgment against Canadian Commercial, they can seek satisfaction through the California Superintendent. The substantiality of these claims is relevant to the question whether comity is consistent with domestic interests.[18]

The final requirement is that the decision of the district court be effectively unreviewable on appeal from a final judgment. Many courts, including this Court, have held this requirement to be the fundamental characteristic of the collateral order doctrine.[19] Because of this essential requirement, almost all denials of motions to dismiss are not immediately appealable. If, on appeal from a final judgment, an appellate court finds that the motion to dismiss should have granted, it can direct the lower court to dismiss. The rights of the movant will have been vindicated, although after the movant has suffered the expense and delay of trial. As we have said before, however, this "sort of injury follows in every denial of a motion to dismiss a complaint and does not justify an exception to the final-judgment rule".[20]

The Canadian defendants maintain, nevertheless, that comity protects them from the burdens of facing trial, itself. Thus, they argue, appeal from a final judgment would not vindicate the right afforded by comity—the right not to stand trial. For this conclusion, they rely on the recent Supreme Court decision in *Mitchell v. Forsyth.*[21]

*Mitchell* involved an action for damages against a former Attorney General of the United States for an allegedly illegal wiretap he caused while in office. The district court granted the plaintiff's motion for summary judgment on the issue of liability and held that the defendant was not entitled to a defense of absolute or qualified immunity. The defendant appealed immediately. The Third Circuit upheld the district court's decision concerning absolute immunity but held that the issue of qualified immunity is not an appealable collateral order.[22] The defendant sought and obtained review in the Supreme Court.

The Court first recognized the only other situations in which it had held a denial of a motion to dismiss to be immediately appealable: claims of absolute immunity[23] and double jeopardy.[24] The common characteristic of these claims is the right not to stand trial. Because this right could not be vindicated on appeal from a final judgment, both these claims satisfied the "major characteristic" of collateral orders that " 'unless it can be reviewed before' the proceedings terminate, 'it can never be reviewed at all' ".[25] Thus, concluded the Court: "At the heart of the issue before us in the question whether qualified immunity shares this essential attribute of absolute immunity—whether qualified immunity is in fact an entitlement not to stand trial under certain circumstances".[26]

The Court examined the purposes of extending qualified immunity to governmen-

*Lambert Group, Inc. v. Galadari,* 777 F.2d 877, 881 (2d Cir.1985).

17. *See supra* note 3.

18. *See Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937–38 (D.C.Cir.1984).

19. *E.g., Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *United States v. Garner,* 749 F.2d 281, 290 (5th Cir. 1985); *Boreri v. Fiat S.P.A.,* 763 F.2d 17, 21 (1st Cir.1985).

20. *Anchor Hocking v. Willamette Ind., Inc.,* 694 F.2d 1041, 1043 (5th Cir.1983).

21. —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

22. *Forsyth v. Kleindienst,* 729 F.2d 267 (3rd Cir. 1984).

23. *Mitchell,* 105 S.Ct. at 2815 (citing *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) and *Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979)).

24. *Id.* (citing *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)).

25. *Id.* (quoting *Stack v. Boyle,* 342 U.S. 1, 12, 72 S.Ct. 1, 7, 96 L.Ed. 3 (1951)).

26. *Id.*

tal officers. It recognized the costs of subjecting officials to the risks of trial—distraction from duty, inhibition of discretionary action, and deterrence of able people from public service.[27] Because of these costs, qualified immunity is an entitlement to *"immunity from suit* rather than a mere defense to liability".[28] Therefore, the denial of a claim of qualified immunity is "effectively lost if a case is erroneously permitted to go to trial".[29] Since the denial is also conclusive of the question and separable from the merits, the Court held that it is immediately appealable.[30]

The *Mitchell* decision affirms a distinction that the Court had recognized before. In *United States v. Hollywood Motor Car Co.,* [31] the Court held that a claim of vindictive prosecution does not implicate an immunity from suit of the kind sufficient to allow a *Cohen* appeal. The Court reached the same conclusion regarding a claim under the speedy trial clause in *United States v. MacDonald.* [32] In both decisions, the Court held that, although the claimants asserted an absolute defense to the proceeding, they did not assert a recognized protection from the burdens of trial, itself.[33] Thus, the rights of the claimants could be adequately vindicated on appeal from a final judgment.

The question that we must answer is, therefore, whether international comity is an entitlement not to stand trial. International comity is deference to the acts of a foreign government. Its purpose is to serve the mutual interests of the *sovereigns,* rather than the interests of individuals. We can identify no particular purpose of comity that would be frustrated by requiring the appellants to await final judgment before bringing their appeal. In this regard, the appellants' argument is even less compelling than that for claims of vindictive prosecution or violation of the speedy trial clause, yet these latter claims are effectively reviewable after the conclusion of trial. At most, the appellants assert merely a defense to liability.[34] Therefore, the district court's denial of the claim fails the third and most important requirement of the collateral order exception.

### III.

■ Alternatively, appellants argue that the district court's decision is appealable under the "pragmatic finality" exception recognized in *Gillespie v. United States Steel Corporation.* [35] In *Gillespie,* the Court held that certain "marginal cases coming within ... the 'twilight zone' of

**27.** *Id.*

**28.** *Id.* 105 S.Ct. at 2816 (emphasis in the original). We have recognized the importance of this distinction in an earlier case involving absolute immunity: "Finally we caution that the right of appeal recognized today only extends to an immunity that accords protection from trial as distinguished from possible defense to liability." *Williams v. Collins,* 728 F.2d 721, 727 n. 7 (5th Cir.1984).

**29.** *Id.*

**30.** Because of the nature of the claim of qualified immunity, the Court found that the requirements of conclusiveness and separability are met. First, the district court's denial "conclusively determines the defendants claim of right not to stand trial because "[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred' ". *Id.* (quoting *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977)). Second, the denial is sepa-

rable because the claim of immunity raises a question that is distinct from the merits and that is "purely legal". *Id.* 105 S.Ct. at 2816 & n. 9.

**31.** 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982).

**32.** 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978).

**33.** *See Hollywood Motor Car,* 458 U.S. at 265–69, 102 S.Ct. at 3082–85; *MacDonald,* 435 U.S. at 860–61 & n. 7, 98 S.Ct. at 1552–53 & n. 7.

**34.** We say "at most" because comity is not an absolute defense to liability. Rather, comity only requires that effect be given to the foreign act. Whether it requires dismissal of the action, a stay of the proceedings, or some other act of deference depends on the circumstances of the case.

**35.** 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

finality" should be considered final if the denial of justice cause by delay outweighs the competing concern of piecemeal review.[36] We need not consider the issue in depth to conclude that *Gillespie* is not applicable to this case. In *Coopers & Lybrand v. Livesay*,[37] the Supreme Court later held that "[i]f Gillespie were extended beyond the unique facts of that case, § 1291 would be stripped of all significance".[38] More recently, this Court, sitting en banc, held:

> The panel's case-by-case methodology of determining pragmatic finality for purposes of reviewability [in reliance on *Gillespie*] is thus in fundamental conflict with the values and purposes of the finality rule to avoid the delay and system-costs of piecemeal and multiple appeals, and to provide a relatively clear test of appealability so that needless precautionary appeals not be taken.[39]

We find no reason in this case that justifies a resurrection of *Gillespie*.

### IV.

Appellants raise an important question concerning international comity. We realize that by dismissing this appeal, we only defer the question and, perhaps, must consider it another day. Our jurisdiction, however, is neither plenary nor discretionary. It is strictly limited by statute. Principally because we shall be able to review the district court's decision another day, after development of the facts, we should not review it now. The rule is clear: absent a substantial entitlement not to stand trial, the denial of a motion to dismiss is not appealable under § 1291 until a final judgment has been entered. Accordingly, the appeal is dismissed.

36. *Id.*, 379 U.S. at 152–53, 85 S.Ct. at 311.

37. 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

38. *Id.*, 437 U.S. at 477 n. 30, 98 S.Ct. at 2462 n. 30.

39. *Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399, 405 (5th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984); *see also United States v. Garner*, 749 F.2d 281, 288–89 (5th Cir.1985).