**State of TEXAS,**

v.

**AMERICAN BLAST FAX, INC., et al.**

**No. A 00 CA 085 SS.**

United States District Court,
W.D. Texas,
Austin Division.

Feb. 9, 2001.

C. Brad Schuelke, Assistant Attorney General, Austin, TX, James L. Anthony, Office of the Attorney General, Consumer Protection Division, Austin, TX, for State of Texas, plaintiff.

Dean D. Hunt, Bracewell & Patterson, L.L.P., Houston, TX, Andrew M. Taylor, Bracewell & Patterson, L.L.P., Austin, TX, for American Blastfax, Inc., defendant.

### ORDER

SPARKS, District Judge.

BE IT REMEMBERED that on the 2nd day of February 2001, the Court held a hearing in the above-captioned cause at which all parties appeared by counsel of record and at which the Court considered Defendants' Motion to Quash [# 39], Defendants' Motion to Extend Expert Deposition Deadline [# 40], Plaintiff's Motion to Compel or Strike [# 41], Plaintiff's Motion for Partial Summary Judgment [# 44] and Defendants' Motion for Summary Judgment [# 46]. After considering the motions, response and reply briefs, arguments of counsel, the applicable law and the case file as a whole, the Court enters the following opinion and order.

This case is brought by plaintiff the State of Texas against defendants American Blastfax, Inc. ("Blastfax") and Blastfax's two officers and directors, Michael and Greg Horne, alleging causes of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM.CODE § 17.41 ("DTPA"). Specifically, the State claims the defendants are sending unsolicited fax advertisements within Texas in violation of the TCPA, and are violating the DTPA by misleading consumers in Texas about the legality of the defendants' business. The State seeks summary judgment on the issues of liability under the TCPA and DTPA, as well as on damages under the TCPA. The defendants seek summary judgment on all claims.

### Summary Judgment Standard

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. *See* FED. R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). In deciding summary judgment, the Court should "construe all facts and inferences in the light most favorable to the nonmoving party." *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990).

### Analysis

**I. TCPA Claims**

The TCPA prohibits sending fax advertisements to a person without their "prior express invitation or permission." *See* 47 U.S.C. §§ 227(a)(4) and (b)(1)(C). The FCC has elaborated on this definition and declared that, if a business has an "established business relationship" with a person, the business presumptively has permission to send fax advertisements to that person. *See* 7 F.C.C.R. 8752, n. 87, 1992 WL 690928 (1992) ("[F]acsimile transmissions from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient.").

The evidence presented by the State shows Blastfax has violated the TCPA. Specifically, Blastfax's president testified in deposition that Blastfax does

not have prior express invitation or permission from, or a business relationship with, over half the people to whom it sends fax advertisements:

Q: Would you agree that there is a significant number of people in your database with which you do not have permission or consent or a business relationship with to send faxes?

A: Yes.

Q: Would you agree that number is over half of your database?

A: Probably.

*See* Plaintiff's Motion, Ex. B, at 72. Blastfax presents no summary judgment evidence to refute this statement.[1] Instead, Blastfax spends the bulk of its 44–page brief arguing the TCPA does not apply to intrastate faxes, and that the TCPA is unconstitutional because it violates the First Amendment, its mandatory damages provision violates the Due Process Clause, and its distinction between commercial and noncommercial speech violates the Equal Protection Clause. The Court has already addressed and rejected each of these arguments. *See Texas v. American Blastfax, Inc.,* 121 F.Supp.2d 1085 (W.D.Tex.2000). The Court sees no reason to change its rulings on these issues.

At the hearing, Blastfax's counsel repeated the argument that the TCPA does not apply to intrastate faxes. As noted, the Court discussed this issue at length in its October 5, 2000 order, and concluded, as a matter of law, that the TCPA applies to intrastate faxes. The law in this area has not changed, and legal commentators have reached the same conclusion. *See, e.g.,* Hilary B. Miller and Robert R. Biggerstaff, *Application of the Telephone Consumer Protection Act to Intrastate Telemarketing Calls and Faxes,* 52 FED. COMM.L.J. 667, 686 (2000) ("The TCPA applies not only to interstate but also to purely intrastate telemarketing calls and faxes. To conclude otherwise would ignore the statute's conforming amendment, its language with respect to local calls, the FCC's administrative interpretations, and the clear legislative history."). While Blastfax of course disagrees with this holding, it has been the law of this case since October 5, 2000.[2]

Blastfax's counsel also spent a great deal of time at the hearing arguing the First Amendment issue, and specifically arguing Blastfax's unsolicited fax advertisements were entitled to greater protection than traditional commercial speech. This general argument was addressed and rejected in the Court's October 5, 2000

---

1. In its response brief, Blastfax does point to another portion of its president's deposition testimony, in which he states that Blastfax does have "prior business relationships" with some of its customers. *See* Defendants' Response, at 3–4. This certainly may be true, and may explain Blastfax's relationship with the rest of its database. However, it does not refute the testimony by Blastfax's president that Blastfax has *no* prior business relationship with (or express permission to send fax advertisements to) "over half" its database of fax recipients.

2. In its response brief, Blastfax argues the Court's October 5, 2000 order "does not represent binding authority or have precedential

value," *see* Defendants' Response, at 5–6, and in support of this position quotes the Fifth Circuit's statement that "[g]enerally, a denial of a motion to dismiss does not conclusively determine anything because it merely decides that questions of fact remain to be decided." *See id.* at 6 (quoting *Pan Eastern Expl. Co. v. Hufo Oils,* 798 F.2d 837, 839 (5th Cir.1986)). The Court's October 5, 2000 order, however, does not fall under this "general" rule, since the Court conclusively determined, as a matter of law, that the TCPA applies to intrastate faxes and does not violate the First Amendment, the Due Process Clause, or the Equal Protection Clause. *See Blastfax,* 121 F.Supp.2d 1085.

order, and will not be revisited. Two specific points raised at the hearing, however, require additional discussion.

First, at the hearing Blastfax's counsel relied heavily on the Supreme Court's recent decision in *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000), contending that case has "striking similarities to this one." *See* Defendant's Summary Judgment Motion, at 33. This argument misses the forest for the trees. The *Playboy* case involved restrictions by cable companies on the Playboy channel, and specifically whether cable companies could limit the Playboy channel (and other "sexually explicit" channels) to broadcasting only during the late evening, and/or force these channels to scramble their signals during all broadcast times. Blastfax argues that, because the Supreme Court applied the "less restrictive alternative" test in that case, the same test should apply here. What Blastfax misses, however, is that the Playboy channel is not commercial speech.[3] It is no more an advertisement than the Discovery Channel. Here, the TCPA provision at issue applies exclusively to commercial speech, and is not a "content-based" regulation for purposes of the First Amendment.[4] In addition, the TCPA does not deal with cable subscribers, who pay money to third parties and invite them to send transmissions into the subscribers' homes—the TCPA deals with consumers who receive *unsolicited* advertisements from third parties. For these reasons, the *Playboy* case is not applicable here.

■ Second, Blastfax claims the Supreme Court's "more stringent" review enunciated in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), should apply, because the TCPA regulates purely truthful, non-misleading commercial messages. Again, Blastfax ignores the bigger picture. In *44 Liquormart*, in the same paragraph upon which Blastfax relies, the Supreme Court also stated that when a statute "regulates commercial messages to protect consumers from ... aggressive sales practices ... the purpose of its regulation is consistent with the reasons for according constitutional protection to commercial speech and therefore justifies less than strict review." *Id.*, 116 S.Ct. at 1507. Here, the TCPA is expressly aimed at regulating the "aggressive sales practice" of unsolicited fax advertisements. Therefore, the "more stringent" standard of review in *44 Liquormart* does not apply.

In sum, the State has presented compelling and competent summary judgment evidence showing Blastfax violated the TCPA. Blastfax does not dispute this evidence, but merely repeats the same chal-

---

3. At the hearing, Blastfax's counsel repeatedly referred to the *Playboy* case as a "commercial speech" decision, and as heralding the Supreme Court's new position in commercial speech jurisprudence.

4. Blastfax argues in its brief the TCPA provision at issue is a "content-based" regulation because it regulates the "content" of commercial speech. *See* Motion, at 32. As its sole support for this statement, Blastfax cites to *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). However, the Court in *Discovery Network* did not say what Blastfax claims—that every commercial speech law is necessarily a content-based regulation for First Amendment analysis purposes—but rather stated the regulation at issue in that case, which purported to be a purely commercial speech regulation, was in fact content-based because "[u]nder the city's newsrack policy, whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack. Thus, by any commonsense understanding of the term, the ban in this case is 'content based.'" *Id.*, 113 S.Ct. at 1516–17. No such circumstances exist here.

lenges to the validity and applicability of the TCPA which the Court rejected four months ago. Accordingly, the State is entitled to summary judgment with respect to Blastfax's liability under the TCPA.

■ The State also seeks summary judgment on the individual defendants' personal liability under the TCPA, the amount of liquidated or actual damages under the TCPA, and a ruling that the defendants' violation of the TCPA was "willful or knowing."[5] While the State has presented significant evidence to support a finding against the defendants on these issues, questions of material fact still exist which preclude the Court from ruling on these issues as a matter of law. Therefore, the State's motion for summary judgment on these issues is denied; they will be decided by a fact-finder. To be clear, the Court holds, as a matter of law, that Blastfax has violated the TCPA. The Court further finds that a trial before a fact-finder is necessary to determine: (1) the amount of liquidated damages (including the number and date of violations) under the TCPA; (2) whether the State is entitled to additional damages for "willful or knowing" violations of the TCPA (including the number and date of any such violations); (3) whether the individual defendants are personally liable for damages under the TCPA; and (4) the injunctive relief, if any, to which the State is entitled under the TCPA.

## II. DTPA Claims

■ The State also seeks summary judgment on the issue of liability under the DTPA. The State, by way of its consumer protection division, has the authority to bring a DTPA action to enjoin and seek damages for any "false, misleading or deceptive act or practice" in the advertising of any good or service that directly or indirectly affects the people of Texas. *See* DTPA §§ 17.45(6), 17.46(a) and 17.47. An act or practice is misleading or deceptive if it "has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous." *See Spradling v. Williams*, 566 S.W.2d 561, 562–63 (Tex.1978) (approving jury instruction language). The DTPA provides a list of acts the legislature has defined as deceptive. This list includes "representing that goods or services have ... approval ... which they do not have." *See* DTPA § 17.46(b)(5). It also includes "the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." *See id.* § 17.46(b)(23). If the undisputed summary judgment evidence shows a defendant engaged in one of these enumerated acts, a summary judgment ruling that the act is deceptive, and therefore violates the DTPA, is appropriate. *Cf. Spradling*, 566 S.W.2d at 564 ("An act or practice which is not among those listed in subsection 17.46(b) requires a jury issue to determine as a fact whether it was deceptive."). Here, the State has provided undisputed summary judgment evidence that Blastfax engaged in both acts.

Specifically, the State presents evidence that Blastfax—by express representations and by failing to disclose information about the TCPA and/or information about the

---

**5.** The TCPA provides that, when a State brings a claim, it may recover "actual monetary loss or receive $500 in damages for each violation" and further provides that "[i]f the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence." *See* 47 U.S.C. § 227(f)(1).

Court's October 5, 2000 order—told potential customers and fax recipients in Texas that Blastfax's unsolicited intrastate fax advertisements are not unlawful in any manner.[6] First, the State presents a November 19, 2000 letter from Blastfax's counsel to a complaining fax recipient, in which Blastfax's counsel states that intrastate unsolicited fax transmissions "are not prohibited by either federal or Texas state law." *See* Plaintiff's Motion, Ex. E, at tab 1. Second, the State presents testimony from Blastfax's president that, if a potential customer inquires about the legality of sending unsolicited fax advertisements, it is Blastfax's policy is to send the customer a copy of one Texas statute on this issue (not the DTPA), but to say nothing about the TCPA or this Court's October 5, 2000 order, and to represent that Blastfax's unsolicited intrastate faxes are not illegal in any manner. *See id.*, Ex. B, at 65–69. Third, the State presents the transcript of an October 16, 2000 phone call between a Blastfax salesperson and a potential customer, in which the Blastfax salesperson, in attempting to sell Blastfax's services, claims the TCPA only applies to interstate faxes and that Blastfax's unsolicited intrastate fax advertisements are not illegal in any manner. *See id.*, Ex. D. Finally, in his deposition, Blastfax's president testified as follows on this issue:

Q: Judge Sparks' order held that the TCPA applies to intrastate practices. In light of that holding, why have you not changed your practices regarding what's disclosed?

A: We just feel like that we didn't want to change it.

*See id.*, Ex. B, at 71. This evidence demonstrates that Blastfax has engaged in, and continues to engage in, practices specifically prohibited by § 17.46(b)(5) and § 17.46(b)(23) of the DTPA.

Blastfax does not dispute this evidence. Instead, it argues the State's DTPA claim fails because there is no allegation that the actual *advertisements* sent by Blastfax are misleading—there is only an allegation that Blastfax's representations and/or omissions regarding the legality of sending the advertisements are misleading. However, the DTPA is broader than simply prohibiting misleading advertisements; it applies to any "false misleading or deceptive acts or practices in the conduct of any" advertising and, as noted, it specifically lists false representations of approval and failures to disclose material information as deceptive practices. Blastfax's argument on this issue therefore is unpersuasive; accordingly, the State is entitled to summary judgment on the issue of Blastfax's liability under the DTPA.[7]

---

**6.** The State also argues Blastfax violates the DTPA as a matter of law every time it sends an unsolicited advertisement, on the theory that the act of faxing these advertisements is itself an "implied misrepresentation" that the practice of sending such faxes is legal. This is not one of the acts expressly enumerated in § 17.46(b) of the DTPA. The State also does not cite any case directly applicable to this theory of liability. Therefore, the Court will not grant summary judgment on this issue. However, the State may still attempt to prove to a jury (or to the Court, if a bench trial is requested by both parties) that this practice constitutes a misleading or deceptive act under the DTPA. *See Spradling*, 566 S.W.2d at 564 ("An act or practice which is not among those listed in subsection 17.46(b) requires a jury issue to determine as a fact whether it was deceptive.").

**7.** In its response brief, Blastfax also argues summary judgment on its DTPA liability is inappropriate because the State has not established that Blastfax had a "duty to disclose" any information about the legality of its business practices. *See* Defendants' Response, at 7–8. However, the DTPA does not require a "duty to disclose" to impose liability, and the cases cited by Blastfax all deal with a breach of fiduciary duty, which is not a cause of action here.

The State also seeks a summary judgment ruling on the individual defendants' personal liability under the DTPA. Again, the Court finds sufficient factual questions preclude a ruling as a matter of law on this issue. This issue, as well as the issues of DTPA damages (including the number and date of violations), and the scope of any injunctive relief available to the State under the DTPA, are preserved for trial.

In accordance with the foregoing, the Court enters the following orders:

IT IS ORDERED that Defendants' Motion to Quash [# 39], Defendants' Motion to Extend Expert Deposition Deadline [# 40] and Plaintiff's Motion to Compel or Strike [# 41] are DISMISSED AS MOOT upon the representation of the parties that all issues therein have been resolved;

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [# 44] is GRANTED IN PART and DENIED IN PART as described in this order; and

IT IS FINALLY ORDERED that Defendants' Motion for Summary Judgment [# 46] is DENIED.